ALVIN AND ALICE B. BUTCHKO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Butchko v. Commissioner
Docket No. 3191-77.
United States Tax Court
T.C. Memo 1978-209; 1978 Tax Ct. Memo LEXIS 306; 37 T.C.M. (CCH) 894; T.C.M. (RIA) 780209; June 7, 1978, Filed Richard H. Foster, for the petitioners. Lawrence G. Becker and Woodford G. Rowland, for the respondent. DAWSON
*308 MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $105 in petitioners' Federal income tax for the year 1974. Concessions were made by the parties. The issue remaining for our decision is whether petitioners may utilize cash register shortages arising in Mr. Butchko's employment as a pari-mutuel ticket sales clerk either as an offset in determining his gross income or as a deduction in computing adjusted gross income. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Alvin Butchko and Alice B. Butchko (petitioners), husband and wife, resided in San Francisco, California, at the time they filed their petition in this case. Petitioners timely filed a joint Federal income tax return for 1974 with the office of the Internal Revenue Service at Fresno, California. Since Alice B. Butchko is involved in this proceeding solely because a joint return was filed, Alvin Butchko will be referred to as petitioner.
Petitioner is a racetrack teller who accepts wagers at various *309 racetracks by selling pari-mutuel tickets to the customers of those tracks. During 1974, petitioner was employed as a pari-mutuel clerk by the California Jockey Club, the Tanforan Racing Association, the Pacific Racing Association and the California Capitol Trotting Association during the racing season of each. A pari-mutuel clerk, such as petitioner, participates in many monetary transactions and occasionally makes errors. If, as a result of these errors, a pari-mutuel employee at the end of the day has more money than he should, it is termed an overage. If at the end of the day that employee has less money than he should, it is termed a shortage. Petitioner's employment was subject to the provisions of the agreement of his employers with the Pari-Mutuel Employee's Guild of California, Local 280, Service Employee's International Union, AFL-CIO (Agreement). Article VI of that agreement provides in part: SECTION 1. The rates of pay and job description attached to this Agreement are incorporated herein and made a part of this Agreement. It is agreed that the rates of pay set forth in the wage schedule and classifications attached hereto and made a part hereof, shall be the *310 agreed compensation for work performed in one (1) working day during the racing season regardless of the hours required to perform such work * * *
SECTION 8.Short slips shall be given to employees daily. Shortages will be offset against overages and the net shortage, if any, will be settled weekly. All amounts remaining over shall be given to the individual employee no later than ninety (90) days after the end of the Meet. The attachment to the agreement sets forth a specific daily rate of pay for petitioner's job as a seller. The agreement further provides for additional pay to sellers and other racetrack employees in specific circumstances, for example, when more than eight races are run in any one day. Section 1 of Article VII of the agreement provides that: SECTION 1. Any employee, except as set forth herein, shall not be held responsible for lost, stolen, or damaged property of the Employer except in the case of proven negligence or willful act on the part of the employee. Those employees handling money, tickets, programs, or any other articles held for sale to the public shall be accountable to the Employer for any loss or shortage thereof except when *311 such loss or shortage is caused by: (a) force or threat of bodily harm; (b) acceptance of counterfeit mutuel tickets difficult to detect by a skilled and competent clerk; (c) acceptance of counterfeit money which is clearly not detectible; (d) proven theft; (e) catastrophe or other external causes beyond the control of the employee * * * Consistent with the foregoing agreement, the employment applications completed and signed by petitioner for each of his employers contained the following statement: "I agree to pay for all shortages for which I may be responsible." For certain days and for certain weeks petitioner had overages. Petitioner's employers did not pay him his overages each day they occurred but held the overages to be set off against possible future shortages. If petitioner had a net overage, in accordance with the agreement, it would have been paid to him at the termination of that particular employer's racing season. In 1974, however, petitioner had total net shortages of $358. When employed by the Tanforan Racing Association, petitioner's shortages were deducted from his pay. When petitioner was employed by the California Capitol Trotting Association in the Sacramento *312 area, he received a shortage notice at the end of each week and was required to pay his shortage before he was permitted to work the following week. The statutory framework for the classification of income for the Federal income taxation of individuals is essentially three-tiered: gross income, adjusted gross income and taxable income. Section 61(a) [1] provides the general definition of gross income: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items * * *". Courts have viewed this broad definition as evidence of congressional intent to tax all gains except those specifically excluded by law. See, e.g., Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 429-30 (1955); Ostheimer v. United States,264 F.2d 789, 792 (3d Cir. 1959). The specific statutory exclusions from gross income are provided in sections 101 through 124. In addition, in a manufacturing, mercantile, or mining business, gross income does not include the cost of goods sold. Section 1.61-3(a), Income *313 Tax Regs. None of these exclusions is applicable, however, to the facts of petitioner's case. Adjusted gross income is defined in section 62 in pertinent part as follows: For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (1) TRADE AND BUSINESS DEDUCTIONS.--The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee. (2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.-- (A) REIMBURSED EXPENSES.--The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer. (B) EXPENSES FOR TRAVEL AWAY FROM HOME.--The deductions allowed by part *314 VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) TRANSPORTATION EXPENSES.--The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (D) OUTSIDE SALESMEN.--The deductions allowed by part VI (sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer. * * *
The final tier, taxable income, is defined in section 63: [2]
(a) GENERAL RULE.--Except as provided in subsection (b), for purposes of this subtitle the term "taxable income" means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following). (b) INDIVIDUALS ELECTING STANDARD DEDUCTION. *315 --In the case of an individual electing under section 144 to use the standard deduction provided in part IV (sec. 141 and following), for purposes of this subtitle the term "taxable income" means adjusted gross income, minus-- (1) such standard deduction, and (2) the deductions for personal exemptions provided in section 151. Expenses which are allowable as itemized deductions include those allowable under section 162 as ordinary and necessary business expenses incurred in carrying on the trade or business of being an employee. See, e.g., Primuth v. Commissioner,54 T.C. 374, 377 (1970), appeal dismissed per stipulation (7th Cir., Sept. 4, 1970). In summary, gross income is defined as all gain from whatever source derived unless specifically excluded by law. Adjusted gross income is gross income less certain specified deductions. Taxable income is less certain specified deductions. Taxable income is adjusted gross income less *316 personal exemptions and itemized deductions or, in lieu of itemized deductions, the standard deduction. The issue here is where within this framework petitioner's shortages fall. Petitioner contends that the shortages should be allowed as an offset against gross income, in effect as an exclusion of the amount of his wages necessary to compensate his employer for shortages incurred by petitioner. In the alternative petitioner contends that with respect to overages and shortages he was engaged in a separate trade or business apart from his status as an employee so that the shortages are deductible in determining adjusted gross income, presumably pursuant to section 62(1). Respondent, on the other hand, argues that the shortages are an employee business expense of a type which qualifies for deduction only from adjusted gross income and only if deductions are itemized. We think the statutory structure mandates the conclusion advanced by respondent. We find no merit in petitioner's contention that the shortages should be allowed as an offset against gross income. Petitioner was in the trade or business of being an employee of the various racetracks as a pari-mutuel clerk. As such *317 his compensation was specified in the collective bargaining agreement at a set rate and must be included in its entirety in gross income. Petitioner's shortages were not a factor in determining gross compensation. Rather, the shortages were an expense which petitioner incurred in earning the agreed gross compensation. Petitioner may not, as he attempts to, escape characterization of the shortages as employee business expenses by arguing that he had "no claim of right" [2] to such amounts. The fact that, as a condition of employment, petitioner was obligated to pay for the shortages does not permit circumvention of the statutory design to treat employee business expenses as deductions rather than exclusions from gross income. In this respect petitioner's shortages are no different from expenses for items such as uniforms or tools which certain employees may be required to incur as a condition of employment. The Code and regulations thereunder provide that such employee business expenses are allowable as deductions in determining adjusted gross income or taxable income as appropriate. By negative inference, such employee business expenses have no effect on the calculation of gross *318 income. *319 This result is not altered by the deduction of such amounts by some of petitioner's employers prior to paying him. The situation here is analogous to cases where gross income was found to include income from discharge of preexisting indebtedness owed to the employer. See Newmark v. Commissioner,311 F.2d 913, 915 (2d Cir. 1962), affg. a Memorandum Opinion of this Court; Tucker v. Commissioner,69 T.C. 675, 678-79 (1978). Contrary to petitioner's contentions, we do not think these cases may be distinguished on the ground that petitioner's debt to his employer arose contemporaneously with the earning of the income. The fact remains that the shortages represented a debt to the employer for an employee business expense. Upon the cancellation of that debt petitioner received an economic benefit which is includable in his gross income. See Tucker v. Commissioner,supra at 678-79. As an alternative argument petitioner seeks to characterize his shortages and overages as a trade or business distinct from his employee status so that the expenses would qualify as a deduction from adjusted gross income pursuant to section 62(1). Petitioner's *320 argument is frivolous. Petitioner's shortages and overages occurred as a result of inadvertent errors in transactions which were an integral part of his employment as a parimutuel clerk. They in no way may be likened to a separate trade or business. The shortages arose from errors in transactions undertaken in the "performance of services by the taxpayer as an employee" and therefore do not qualify for deduction from gross income pursuant to section 62(1). As a result, the allowability of these shortages as deductions from gross income is governed by section 62(2).Section 62(2) allows a deduction of employee business expenses from gross income if they are expenses for which the employee receives reimbursement from his employer, expenses for travel away from home, transportation expenses, or expenses of outside salesmen. Petitioner's shortages may be characterized as none of these. Consequently, the shortages are employee business expenses which do not qualify for deduction under section 62(2); they qualify for deduction only as itemized deductions from adjusted gross income. Since petitioner elected the standard deduction, he may not also deduct these expenses separately. *321 We hold that the shortages may not be utilized by petitioner as an offset against gross income or as a deduction in determining adjusted gross income. The shortages are an employee business expense of the type which may only be deducted from adjusted gross income and only if the standard deduction is not elected. To reflect concessions by the parties and our conclusion on the disputed issue, Decision will be entered under Rule 155. Footnotes
1. Unless specified otherwise, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
2. Section 63 was amended to replace the standard deduction with zero bracket amounts for taxable years beginning after December 31, 1976. Sec. 102(a), Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 134.↩
2. By using this language to describe his responsibility for the shortages, petitioner seeks to invoke the claim of right doctrine and the case law developed thereunder. Under that doctrine, if "a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932). Petitioner relies on subsequent cases which have held that a taxpayer need not include amounts received under a claim right if within the same taxable year it is determined that such claim was erroneous or if the amount initially received was subject to the happening of contingencies within the year which did not come to fruition. See, e.g., United States v. Merrill,211 F.2d 297 (9th Cir. 1954); Curran Realty Co. v. Commissioner,15 T.C. 341 (1950); Clark v. Commissioner,11 T.C. 672↩ (1948). Those cases are inapposite, however, since they dealt with situations where gross compensation was the variable at issue. Here, petitioner's compensation was fixed by agreement. His shortages represent an employee business expense rather than a variable affecting gross income for Federal tax purposes.