**In re Saleem BLACK.**

**Bankruptcy No. 89–50188 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

May 21, 1991.

Martha Hunt, Little Rock, Ark., for debtor.

Karen Osborne, Washington, D.C., for I.R.S.

Walter Dickinson, Trustee, pro se.

ORDER OVERRULING DEBTOR'S OBJECTION TO THE CLAIM OF THE INTERNAL REVENUE SERVICE FOR UNPAID TAXES, PENALTIES AND INTEREST FOR THE 1987 TAX YEAR

MARY D. SCOTT, Bankruptcy Judge.

Now before the Court is debtor's Objection to the Claim of the Internal Revenue

Service ("IRS") for unpaid taxes, penalties and interest for the 1987 tax year. On October 18, 1990, this matter came on for hearing, at which time both parties informed the Court that the issues could be decided upon a Joint Stipulation of Facts and Briefs. Martha G. Hunt, Esq. appeared on behalf of the debtor. Karen R. Osborne, Esq. appeared on behalf of the IRS and Walter Dickinson, Trustee, appeared *pro se.* The parties were given forty-five (45) days to submit their stipulation and briefs. After several extensions, debtor filed his Brief and the Joint Stipulation of Facts on April 30, 1991. Thus, the matter was taken under advisement April 30, 1991. The IRS filed its Brief May 1, 1991.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a). Moreover, the Court finds that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1), as exemplified in 28 U.S.C. § 157(b)(2)(B). Accordingly, this Court will enter a final order in this matter. 28 U.S.C. § 157(b)(1).

## BACKGROUND

On June 6, 1989, the debtor, Saleem Black, filed a Chapter 7 bankruptcy petition. On January 12, 1990, the IRS filed, as an unsecured priority claim, a proof of claim for unpaid federal income tax liabilities for the 1986 through 1988 tax years in the amount of $109,397.99. Also on January 12, 1990, debtor filed an Objection to the Claim of the IRS, and a Motion for Determination of Tax Liability. On June 18, 1990 debtor filed an Amended and Restated Objection to the Claim of the IRS for taxes, penalties and interest for the 1987 tax year.[1]

## FACTS

The facts in this matter were submitted in a Joint Stipulation by the parties, the contents of which are hereby incorporated into this Order by reference. For convenience, the essential facts are summarized immediately below.

On January 16, 1987, debtor was employed as an account executive by Prudential–Bache Securities, Inc. ("Prudential"), where he functioned as a securities salesman who initiated transactions in the stock and commodity markets for commissions. Sometime prior to the stock market decline in October 1987, debtor received a written request from a client ("Client") to sell her stock as soon as possible. Debtor, however, failed to promptly sell the stock. Believing this failure to be a trading error for which Prudential could be held liable by Client, debtor informed his manager of the error and his desire to reimburse Client.

On November 4, 1987, Prudential entered into a Release and Settlement Agreement ("Settlement Agreement") with Client. Under the Settlement Agreement, Prudential paid Client $60,000. The Settlement Agreement did not mention the debtor. Subsequently, on November 6, 1987 the debtor reimbursed Prudential the $60,000.

On April 20, 1989, debtor filed with the IRS a 1987 Form 1040 United States Individual Income Tax Return. Debtor's 1040 Form had attached W–2 Forms, which showed that during the 1987 tax year Prudential paid debtor $115,014.57, and Oppenheimer and Company, Inc. paid debtor $15,132.15, for a total income of $130,147.00. The $60,000 Prudential paid Client pursuant to the Settlement Agreement was not included as part of his income for the 1987 tax year on debtor's W–2 Form.

On his 1987 Internal Revenue Form 1040, debtor treated the $60,000 he paid to Prudential as an itemized deduction for an unreimbursed employee business expense, deductible from adjusted gross income below the line. Subsequently, debtor's 1987 tax return was audited by the IRS, which assessed additional taxes. In his objection to the results of the IRS audit, debtor contends that he erred in treating the $60,000 payment to Prudential as an itemized deduction from adjusted gross income, and that the $60,000 should be "excluded" from his reported gross income above the line.

1. The debtor does not object to the portion of    the IRS Claim for the 1986 and 1988 tax years.

## ISSUE

Whether, on his 1987 Tax Return, debtor is entitled to exclude from gross income, as an above the line deduction, the $60,000 which he reimbursed to Prudential for paying Client in accordance with the Settlement Agreement.

## DISCUSSION

■ Section 61(a) of the Internal Revenue Code ("IRC") defines gross income very broadly as "all income from whatever source derived." 26 U.S.C.A. § 61(a) (West 1991). Adjusted gross income is an individual taxpayer's gross income, less the above the line deductions specified by section 62(a). 26 U.S.C.A. § 62(a) (West 1991).[2] Section 62(a) does not, however, create any deductions, but simply determines whether deductions allowed by other provisions are to be deducted from gross income in computing adjusted gross income, or from adjusted gross income in computing taxable income.

### I. *The § 162(a) Business Expense Deduction*

The IRC allows the taxpayer to deduct from gross income, trade or business expenses, "which are attributable to a trade or business carried on by the taxpayer, *if such trade or business does not consist of the performance of services by the taxpayer as an employee.*" 26 U.S.C.A. § 62(a)(1) (West 1991) (emphasis added). Generally, section 62(a)(1) permits all deductions attributable to the taxpayer's trade or business to be subtracted in computing adjusted gross income. Employees, however, under section 62(a)(2) may deduct expenses incurred "in connection with the performance ... of services as an employee" in determining adjusted gross income only if the expenses are covered by a reimbursement arrangement with the employer. Consequently, non-reimbursed employee business expenses are only deductible as an

itemized deduction, below the line, to the extent that they exceed the floor on miscellaneous itemized deductions, which is two percent of adjusted gross income. 26 U.S.C.A. §§ 162 and 67 (West 1991). Further, this deduction is only permitted for taxpayers electing to itemize deductions—an election that is worthwhile only if itemized deductions exceed the standard deduction.

In the present case, debtor contends that the $60,000 which he paid to Prudential is deductible from his gross income as a business expense under 26 U.S.C.A. § 62(a)(1). The IRS argues that this is not a business expense deductible from gross income under § 62(a)(1), but merely a non-reimbursed employee business expense deductible from adjusted gross income as an itemized deduction.[3] Thus, the determination of the proper treatment of this $60,000 payment by the debtor, turns on whether at the time of the transaction, debtor was an employee of Prudential. If debtor was acting as an employee, he is only entitled to a § 62(a)(2) itemized deduction from adjusted gross income, not a § 62(a)(1) deduction in calculating adjusted gross income.

Debtor spends a great deal of time in his brief arguing that he was engaged in a trade or business. This is not, however, the crux of the matter presently before the Court. The IRS does not challenge debtor's initial treatment of the $60,000 as a below the line itemized deduction. The essential issue is whether debtor engaged in his trade or business as an Prudential employee, or as an independent business person. Both debtor and the IRS fail to directly address this issue, and therefore, the Court, with the record before it, proceeds on its own to make this determination.

In Revenue Ruling 79–80, the IRS has stated that expenditures to correct order errors by securities dealers settled by compromise are incurred in the tax year in which the parties agree to compromise.

---

**2.** "The line" referred to is the line of the income tax return form where adjusted gross income is calculated. On debtor's 1987 Form 1040, it is line number 30.

**3.** Debtor treated the $60,000 as an itemized deduction on his 1987 Form 1040 Individual Tax Return, and nowhere does the IRS appear to challenge this treatment of the payment to Prudential.

Rev.Rul. 79–80, 1979–1 C.B. 86. Further, the IRS has stated that the amount of any reimbursement for a dealer order error would be deductible under section 162(a). Debtor's brief argues that this Revenue Ruling grants him a section 162(a) business expense deduction, to be taken above the line. This is not necessarily an accurate reading of the meaning of this Revenue Ruling. The Ruling merely provides that such payments for trading errors are deductible business expenses. Under the facts of the present case, debtor's reliance on this Ruling only further begs the threshold question of whether debtor may properly take the $60,000 deduction above, or below the line. As previously stated, the answer turns on whether debtor was acting as an employee or carrying on an independent business.

In Part III of his Brief, debtor further argues that the $60,000 business expense was incurred to protect his business reputation, and therefore is deductible under section 162(a) as an "ordinary and necessary business expense." The issue in this matter, however, is not whether the $60,000 is deductible under section 162(a), the IRS concedes this point, but whether the deduction is limited by section 62 to be taken below the line as an itemized deduction of an unreimbursed employee business expense.

## II. *"Employee" under the Internal Revenue Code*

■ Generally, an individual is an employee for federal employment tax purposes if the individual has the status of an employee under the usual common law rules applicable in determining the employer-employee relationship. Treas.Regs. §§ 31.3121(d)–1(c), 31.3306(i)–1, and 31.-3401(c)–1(b). In Revenue Ruling 76–138, the IRS decided that securities salespeople were "employees" for purposes of the Federal Insurance Contribution Act, the Federal Unemployment Tax Act, and the Collection of Income Tax at Source on Wages. Rev.Rul. 76–138, 1976–1 C.B. 315. In its analysis, the IRS focused on salespersons' required duties, the degree to which the company controlled salespersons' daily work activities, and the indicia of traditional employee status such as group benefits, provision of work space and supplies, and training programs. *See Id.*

In the present case, debtor and the IRS forewent an evidentiary hearing, thus the only facts before the Court are those contained in the Joint Stipulation submitted by the parties. The Joint Stipulation contains few details concerning debtor's work environment, but describes debtor as having been *"employed* as an account executive by Prudential–Bache Securities, Inc.". Joint Stipulation para. 8 (emphasis added). Moreover, debtor is described as having "informed *his manager* of his error." Joint Stipulation para. 9 (emphasis added). The term "employed" implies an employer-employee relationship. Also, the fact that debtor had a "manager," to whom he reported his trading errors, indicates that debtor was not functioning independently, but as an employee responsible to an identifiable supervisor. Under these facts, the Court concludes that debtor was working for Prudential as an "employee," not as an independent contractor carrying on his own business. The Court finds this a reasonable conclusion to be drawn from the facts and circumstances described in the Joint Stipulation.

In *Butchko v. C.I.R.,* 37 T.C.M. 894 (CCH 1978), taxpayer worked at a race track as a parimutuel betting ticket seller. Under the terms of his employment contract, taxpayer was required to pay to his employer the amount of the net shortages of his cash drawer at the end of each week. The *Butchko* court declined to find that Mr. Butchko was engaging in a separate trade or business as a ticket seller, distinct from his duties as an employee. Instead, the court found Mr. Butchko to be an employee, and that the amounts he paid to cover his shortages were an unreimbursed employee business expense deductible from adjusted gross income as a below the line itemized deduction, not as an above the line exclusion subtracted from gross income to calculate adjusted gross income.

In the present case, debtor reimbursed Prudential for the $60,000 Prudential paid to Client, a debt which arose because of

debtor's trading error. The Court finds debtor's reimbursement to be similar to Mr. Butchko's reimbursement to his employer for shortages in his cash drawer. Like the tax court in *Butchko*, this Court finds that debtor is not entitled to deduct the $60,000 above the line.

Debtor argues further that even if he is found to be an employee, he is nevertheless entitled to an above the line deduction because the $60,000 Prudential paid to the client was an advance on debtor's salary, and the $60,000 debtor paid to Prudential was deductible as a reimbursed employee business expense. Debtor's reasoning and analysis on this point, however, are flawed. Debtor would be correct if in fact Prudential did provide a $60,000 salary advance. But, as the IRS points out, Prudential did not attribute this $60,000 payment as income on debtor's 1987 W–2 Form. Joint Stipulation para. 13. Even if Prudential had done so, debtor would merely be entitled to deduct the $60,000 to offset the $60,000 salary advance. This would have merely negated the advance, and would have resulted in zero net tax consequences for debtor. Thus, this argument is without merit.

Finally, debtor argues that Prudential could have chosen to deduct the $60,000 from his future earnings, and if it had done so, then debtor would be entitled to an above the line deduction because his 1987 income would have been decreased by $60,-000. This contention is also without merit. Assuming for argument's sake that Prudential chose to offset the $60,000 debt against debtor's future earnings, it could only have deducted the $60,000 from debtor's future earnings if debtor did in fact earn future income. This future earned income from which Prudential could have deducted the cost of his trading error, would have been taxed by the IRS. Accordingly, even though debtor may never have received the money, he would still have to have earned it for the income to be attributed to him. He then would have been liable for income taxes on it.

## CONCLUSION

Section 162(a) of the IRC provides for the deduction of "ordinary and necessary ex-

penses ... incurred ... in carrying on any trade or business." IRC section 62(a)(2), however, limits this deduction, for employees who are not reimbursed by their employers, to be taken as an itemized deduction off of adjusted gross income.

In the present case, debtor incurred a deductible business expense of $60,000. Debtor was an employee of Prudential at the time he incurred the $60,000 expense, and was not reimbursed by Prudential. Thus, debtor is limited by section 62(a)(2) to deducting the $60,000 as itemized deduction off of adjusted gross income, not as an exclusion from gross income above the line.

In the present matter, the claim of the IRS for taxes owed for the 1987 tax year contemplates debtor taking the $60,000 as an itemized deduction below the line. Debtor's contention that he is entitled to exclude the $60,000 from his gross income above the line is rejected by the Court.

Accordingly, it is hereby

ORDERED that debtor's Objection to the Claim of the IRS for taxes owed for the 1987 tax year is overruled.

IT IS SO ORDERED.