USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1451 J. KENNETH ALEXANDER AND JOANNE M. ALEXANDER, Petitioners - Appellants, v. INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA, Respondent - Appellee. ____________________ ON APPEAL FROM A DECISION OF THE UNITED STATES TAX COURT ____________________ Before Torruella, Chief Judge, ___________ Aldrich and Coffin, Senior Circuit Judges. _____________________ _____________________ Philip J. Ryan, with whom Ryan, Martin, Costello, Leiter, _______________ ________________________________ Steiger & Cass, P.C. was on brief for appellants. ____________________ William J. Patton, Attorney, Tax Division, Department of __________________ Justice, Loretta C. Argrett, Assistant Attorney General, Gary R. __________________ _______ Allen, Attorney, and Richard Farber, Attorney, Tax Division, _____ _______________ Department of Justice, were on brief for appellee. ____________________ December 22, 1995 ____________________ TORRUELLA, Chief Judge. Respondent-Appellee, the TORRUELLA, Chief Judge ____________ Commissioner of Internal Revenue (the "Commissioner"), determined a deficiency of $57,441 in the 1989 Federal income tax filed by J. Kenneth Alexander (the "Taxpayer") and Joanne M. Alexander (together, the "Appellants" or the "Petitioners"). The Tax Court upheld the Commissioner's determination and the Petitioners now seek review of that decision. For the reasons stated below, we affirm. I. BACKGROUND I. BACKGROUND The pertinent facts, some of which have been stipulated and incorporated in the district court's findings, are not in dispute, and are recapitulated here. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1989. Internal Revenue Code, 26 U.S.C. 1 et seq. (1988 & ______ Supp. 1991). In 1983, Taxpayer entered into an employment agreement with his employer, W. F. Young, Inc. ("Young"), according to which Taxpayer would remain in the capacities of Executive Vice President, Treasurer, and Chief Executive Officer until he reached the age of seventy (70), on December 13, 1993. On October 15, 1987, when Taxpayer was sixty-four (64) years old, Young terminated Taxpayer's employment. Subsequent to his termination, Taxpayer offered management consulting services for a fee, and in 1989 obtained a management consulting contract with the Hanson Group of Ludlow, Massachusetts. -2- On February 10, 1988, Taxpayer filed a civil lawsuit against Young (the "lawsuit"), in which Taxpayer was represented by the law firm of Ryan & White, P.C. ("Ryan & White").1 In his complaint, Taxpayer alleged a breach of the express 1983 employment contract (or "Count I"), a breach of an implied pension benefits contract (or "Count II"), and age discrimination under Massachusetts General Law, Chapter 151B, Section 1 (1976) (or "Count III"). On May 1, 1989, Taxpayer and Young executed a written settlement agreement (the "Settlement Agreement"), according to which Young was to pay Taxpayer $350,000, of which $100,000 was allocated to Count III, and $250,000 to Counts I and II.2 On May 5, 1989, as per the Settlement Agreement, Young issued two checks payable to "J. Kenneth Alexander and Ryan & White, Attorneys for J. Kenneth Alexander," one in the amount of $100,000 (for Count III), and the other in the amount of $225,395.20 (for Counts I and II, less taxes withheld). On the 1989 Federal income tax return, Taxpayer's tax preparer deducted $245,100 from the settlement proceeds attributable to Counts I and II. This deduction was explained in  ____________________ 1 J. Kenneth Alexander v. W. F. Young, Inc., Civil Action No. ____________________ _________________ 82-243 (Mass. Superior Court, Hampden County 1988).  2 The Settlement Agreement also provided that (i) Taxpayer would be deemed to have retired from Young effective October 15, 1987; (ii) Taxpayer would receive monthly payments commencing on May 15, 1989, and continuing for the duration of Taxpayer's life, which total over $70,000 per year; and (iii) Taxpayer and Young executed releases, according to which Alexander surrendered all claims arising out of his employment and its termination. -3- an attached statement, which stated that Taxpayer paid Ryan & White $258,000 in legal fees (the "Legal Fee").3 It also stated that according to Ryan & White's time allocations, 5% of the Legal Fee was attributable to settlement of Count III, and 95% to settlement of Counts I and II. Accordingly, $245,100 (95% of the $258,000 Legal Fee) was deducted from the settlement proceeds attributable to Counts I and II. The Commissioner sent a notice of deficiency disallowing Taxpayer's direct deduction of the Legal Fee from the settlement proceeds. The Commissioner determined that the $250,000 received from Young in settlement of Counts I and II was gross income to Taxpayer, and that the Legal Fee associated with Counts I and II were miscellaneous itemized deductions. Accordingly, the Commissioner reduced the $245,100 deduction reported on the 1989 return to $240,198, due to the increase in Taxpayer's adjusted gross income and the two percent (2-percent) adjusted gross income limitation for miscellaneous deductions. In addition, the Commissioner determined that, due to these adjustments, Taxpayer was liable for the Alternative Minimum Tax ("AMT") under Section 55 of the Code, which resulted in a deficiency of $57,441. Petitioners filed a petition in the United States Tax Court for redetermination of the deficiency. The Tax Court  ____________________ 3 The additional information included in the statement attached to Petitioners' 1989 return, entitled "Disclosure Under Reg. Sec. 1.6661," is not included here because it is not essential for the disposition of the issue on appeal. -4- rejected Petitioners' arguments, entering a final judgment on January 31, 1995, upholding the Commissioner's determination of Petitioners' tax deficiency. This appeal followed. We have jurisdiction pursuant to 26 U.S.C. 7482(a)(1). II. DISCUSSION II. DISCUSSION The only issue on appeal is the proper tax treatment of the Legal Fee. We must determine whether the Petitioners properly deducted the Legal Fee from the settlement proceeds under Section 1001. If we find that they did not, then we must determine whether to treat the Legal Fee as an "above the line"4 trade or business deduction under Section 162 of the Code, or as a miscellaneous itemized deduction "below the line."5 On appeal, Petitioners essentially contend that the Tax Court's decision to uphold the Commissioner's deficiency finding is caused by the erroneous determination that Taxpayer was in the trade or business of "the performance of services as an employee during 1989." Petitioners correctly assert that the defining issue is whether Taxpayer was Young's "employee" for purposes of classifying the settlement proceeds and for determining the deductibility of the Legal Fee under Section 62(a)(1). Although  ____________________ 4 We make reference to the "line" on the federal income tax form where adjusted gross income is calculated. 5 Petitioners do not dispute that by treating the Legal Fee "below the line" the amounts involved trigger the AMT and, thus, their tax deficiency. We recognize that it is this ramification which drives Petitioners' challenge to the Commissioner's determination that the Legal Fee is to be treated as a miscellaneous itemized deduction. -5- we agree with Petitioners' formulation of the defining issue, we reject their arguments and affirm the court below. A. Standard of Review A. Standard of Review We review the Tax Court's decision "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. 7482(a). The treatment of the Legal Fee is purely a question of law and, therefore, subject to de novo review. Estate of Robertson v. _______ ____________________ Commissioner, 15 F.3d 779, 781 (8th Cir. 1994); see also First ____________ ________ _____ National Bank in Albuquerque v. C.I.R., 921 F.2d 1081, 1086 (10th ____________________________ ______ Cir. 1990) (stating that de novo review is applied to tax court's _______ findings of law and of ultimate fact derived from applying legal principles to subsidiary facts). The Tax Court's findings of fact will only be disturbed for clear error. Manzoli v. _______ Commissioner, 904 F.2d 101, 103 (1st Cir. 1990); U.S. v. ____________ ____ Thompson, 406 F.2d 1006, 1009 (9th Cir. 1969); see also Conner v. ________ ________ ______ Commissioner, 847 F.2d 985 (1st Cir. 1988) (emphasizing ____________ appropriateness of giving weight to Commissioner's well- established views). B. Characterization of the Legal Fee B. Characterization of the Legal Fee Petitioners argue that the Legal Fee was properly subtracted from the amount realized in the settlement, as per Sections 1001 and 1016,6 in order to determine the "gain" from  ____________________ 6 Section 1001(a) provides, in relevant part,  The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom -6- the disposition of Taxpayer's "valuable intangible assets," the express and implied contracts and resulting lawsuit. In support of their position, Petitioners contend that the Legal Fee was the "cost of the disposition" of Taxpayer's assets because it was incurred after Taxpayer's employment was terminated for the "sole _____ purpose" of enhancing their value and disposing of them by obtaining either a settlement or judgment. Petitioners further contend that, because Sections 1001 and 1016 make no distinction between the basis and gain rules for capital or ordinary assets, "there is a 'capital account' for all assets, whether those assets are considered capital or ordinary." Thus, Petitioners  ____________________ over the adjusted basis provided in [S]ection 1011 for determining gain . . . . Section 1011(a) provides, in relevant part, The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under [S]ection 1012 . . .) adjusted as provided in [S]ection 1016. Section 1012 provides, in relevant part, The basis of property shall be the cost of such property . . . . Section 1016 provides, in relevant part, (a) General rule. Proper adjustment in respect of the property shall in all cases be made (1) for expenditures, receipts, losses, or other items, properly chargeable to capital account . . . . 26 U.S.C. 1001(a), 1011(a), 1012, 1016 (1988 & Supp. 1991). -7- conclude, the Legal Fee is an "expenditure . . . properly charged to [the assets'] capital account" within the meaning of Section 1016 to be offset against the settlement proceeds in order to determine the "gain" under Section 1001. Upon de novo review, we reject Petitioners' arguments ________ invoking treatment under Section 1001, and their contention that the Tax Court erred when it rejected them. In determining the tax treatment of the Legal Fee, we take as our point of departure Section 61(a), which defines gross income as "all income from whatever source derived," subject to certain exclusions provided in the Code. It includes, and is not limited to, "[c]ompensation for services, including fees, commissions, fringe benefits, and similar items." See Helvering ___ _________ v. Clifford, 309 U.S. 331, 334 (1940) (finding that Congress ________ intended to exert the "full measure of its taxing power" through Section 61(a)). Next, we take into consideration the well- settled rule that the classification of amounts received in settlement of litigation is to be determined by the nature and basis of the action settled, and amounts received in compromise of a claim must be considered as having the same nature as the right compromised. Parker v. United States, 573 F.2d 42, 49, 215 ______ _____________ Ct.Cl. 773 (quoting Carter's Estate v. Commissioner, 298 F.2d _______________ ____________ 192, 194 (8th Cir. 1962)), cert. denied, 439 U.S. 1046 (1978); ____________ see Furrer v. Commissioner, 566 F.2d 1115, 1116 (9th Cir. 1977), ___ ______ ____________ cert. denied, 437 U.S. 903 (1978); Clark v. Commissioner, 67 ____________ _____ ____________ T.C.M. (CCH) 3105 (1994). -8- These two considerations lead us to our test: it "is not whether the action was one in tort or contract but rather the question to be asked is 'In lieu of what were the damages awarded?'" Raytheon Production Corp. v. Commissioner, 144 F.2d _________________________ ____________ 110, 113 (1st Cir.) (citation omitted), cert. denied, 323 U.S. _____________ 779 (1944); see Getty v. Commissioner, 913 F.2d 1486, 1490 (9th ___ _____ ____________ Cir. 1990) (applying Raytheon test in characterizing settlement ________ payment for tax purposes). An amount received in lieu of compensation under an employment contract constitutes gross income to the recipient in the year in which it was received. See Furrer v. Commissioner, 566 F.2d at 1117 (holding lump sum ___ ______ ____________ payment for termination of an agency relationship is ordinary income); Heyn v. Commissioner, 39 T.C. 719, 720 (1963) (holding ____ ____________ amount received in consideration of an employment contract is ordinary income); Clark v. Commissioner, 67 T.C.M. (CCH) at  _____ ____________ ___ (finding that lump sum payment received upon termination of employment contract is ordinary income); Rev. Rul. 58-301, 1958-1 C.B. 23, 24 (holding lump sum payment received by an employee as consideration for the cancellation of his employment contract constitutes gross income to the recipient in the taxable year of receipt); cf. Rev. Rul. 80-364, 1980-2 C.B. 294 (illustrating by ___ way of three hypothetical examples the income and employment tax consequences of interest and attorney's fees awarded in connection with claims for back wages). Under this rubric, whether Taxpayer's employment contracts are "property" or "intangible assets" in the abstract -9- is irrelevant to the proper analysis of the characterization of the settlement proceeds and, thus, the proper tax treatment of the Legal Fee. The Supreme Court's decision in Hort v. ____ Commissioner, 313 U.S. 28 (1941), is particularly instructive: ____________ Where, as in this case, the disputed amount was essentially a substitute for rental payments which 22(a) [of the 1932 Act] expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating right to such payments may be treated as "property" or "capital." Id. at 31. The cancellation of the lease in Hort "involved ___ ____ nothing more than the relinquishment of the right to future rental payments in return for a present substitute payment and possession of the leased premises." Id. at 32. Because those ___ future rents would have been taxed as ordinary income had they been received in the ordinary course of the lease, the "substitute" payment should be treated no differently. Id. ___ Similarly, here, assuming the settlement was a "cancellation" of Taxpayer's contractual rights, what Taxpayer fought for, and received, is merely a substitute payment for the compensation and retirement benefits due him under his express and implied employment contracts. Because his salary and benefits would have been taxed as ordinary income without any offsetting basis if received in the ordinary course under Taxpayer's employment contract, the "substitute" payments can be treated no differently. See Henry v. Commissioner, 62 T.C. 605, 606 (1974) ___ _____ ____________ (holding that amounts received in settlement of breach of -10- employment contract must be held impressed with the same compensatory, taxable character); cf. Hodge v. Commissioner, 64 ___ _____ ____________ T.C. 616 (1975) (addressing suit for back wages); Sterns v. ______ Commissioner, 14 T.C. 420 (1950), affd. per curiam 189 F.2d 259 ____________ ____ __________ (6th Cir. 1951) (same).7 Similarly, Petitioners' argument that, because the settlement was a "cancellation" of his contractual rights, it was a "disposition" within the meaning of Section 1001(a), is  ____________________ 7 In support of their claim that Taxpayer's express and implied contracts were "intangible assets," Petitioners rely on a Fifth Circuit case and two revenue rulings holding that professional football or baseball player contracts were assets with distinct values that could be depreciated by the team owners. Laird v. _____ U.S., 556 F.2d 1224 (5th Cir. 1977) (discussing professional ____ football player contracts), cert. denied, 434 U.S. 1014 (1978); ____________ Rev. Rul. 77-137, 1971-C.B. 104 (same); and Rev. Rul. 67-379, 1967-2 C.B. 127 (same, baseball). Petitioners' reliance is clearly inapposite and unpersuasive. As the Tax Court noted, and as Petitioners concede, Taxpayer's employment contract with Young was neither a depreciable nor a capital asset in his hands. Moreover, while Petitioners correctly maintain that Taxpayer's contract claims were ordinary, not capital, assets, Furrer v. ______ Commissioner, 566 F.2d at 1117 (noting that "[i]f all contracts ____________ granting rights could be considered capital assets, without inquiry into the nature of the rights granted, almost all ordinary income from salaries, wages, or commissions could be transformed into capital gain"), they nonetheless urge us to apply here the rationale adopted in a line of cases addressing the deductibility of legal fees incurred in the disposition of a capital asset. See United States v. Hilton Hotels Corp., 397 ___ ______________ ____________________ U.S. 580 (1970); Woodward v. Commissioner, 397 U.S. 572 (1970); ________ ____________ Helgerson v. United States, 426 F.2d 1293 (8th Cir. 1970); Baier _________ _____________ _____ v. Commissioner, 63 T.C. 513 (1975), aff'd, 553 F.2d 117 (3d Cir. ____________ _____ 1976); see also A.E. Staley Manufacturing Co. and Subsidiaries v. ________ ______________________________________________ Commissioner, 1995 WL 535269 at *46-48, 105 T.C. (CCH) 14 (1995) ____________ (providing a recent discussion of the "origin of the claim" analysis in the context of capital assets). These cases simply do not persuade us that Taxpayer's Legal Fee should be offset against the settlement proceeds because, as we have already explained, Taxpayer's Legal Fee was incurred to obtain damages in the nature of compensation due him under the express and implied employment contracts.  -11- unpersuasive. As the Tax Court correctly noted, assuming the settlement was a "cancellation" of Taxpayer's rights, it does not necessarily follow that the settlement constituted a "disposition" of "property" warranting an offsetting of basis. See Herbert's Estate v. Commissioner, 139 F.2d 756 (3d Cir. 1943) ___ ________________ ____________ (discussing meaning of "disposition" and holding extinguishment of decedent's debt, represented by readily transferable notes and open accounts, was a disposition), cert. denied, 322 U.S. 752 ____________ (1944).8 More importantly, to permit Taxpayer to offset his "cost of disposition" or basis -- the Legal Fee -- would be fundamentally inapposite in light of the controlling fact that the settlement proceeds are clearly in the nature of compensation as Young's employee.9  To recapitulate, what is relevant is that, as the Tax Court found, Taxpayer in substance was suing for damages suffered by the loss of his employment with Young -- his loss of compensation in terms of salary and retirement benefits. This is  ____________________ 8 As the Tax Court correctly noted, Petitioners' reliance on Herbert's Estate is inapposite. Petitioners fail to recognize ________________ that the nature of the claim involved proved an important factor in the court's finding of a "disposition." Unlike the executors in Herbert's Estate, Taxpayer did not hold a claim against Young ________________ in the sense of a "debt," that was readily transferable or liquidated prior to settlement; nor, was he in any way Young's "creditor."  9 One might intuitively argue that some sort of "basis" should be recognized when one has to litigate to receive one's due compensation. The fact remains, however, that the Code simply does not provide for the offsetting of basis in such circumstances except in limited cases involving capital assets. Instead, the Code permits litigation expenses to be taken into account by way of a deduction. See Section C, infra.  ___ _____ -12- a factual determination and, indeed, is one with respect to which we find no clear error. In fact, the claim giving rise to the Legal Fee is inexorably rooted in Taxpayer's employment with Young -- indeed, in his status as Young's "employee."10 Because the damages Taxpayer received are essentially a substitute for the salary and benefits he would have received under the employment contract, they are fully included as ordinary income in Taxpayer's gross income under Section 61, without regard to whether Taxpayer's employment contracts constituted "property" or "intangible assets." Hort, 313 U.S. at ____ 31-32.11 Thus, upon de novo review, we find no error of law in ________ the Tax Court's rejection of Petitioners' arguments in favor of Section 1001 treatment, because the settlement proceeds were  ____________________ 10 We note also that under this rubric it is irrelevant that at the time of the lawsuit, Taxpayer was no longer on Young's payroll. See footnote 14, supra, and related text. Equally ___ _____ irrelevant is Taxpayer's stated purpose for incurring the Legal Fee, namely "to add value to [Taxpayer's] contract claims, and to dispose of those assets by means of either a settlement or a courtroom victory." See Woodward, 397 U.S. at 578 (rejecting ___ ________ purpose test and noting that it would encourage a resort to formalisms and artificial distinctions); U.S. v. Gilmore, 372 ____ _______ U.S. 39, 49 (1963) (rejecting purpose test in favor of origin of claim test). Taxpayer's desire to obtain the salary and benefits due under the employment contracts was clearly the "origin" of the lawsuit - not his alleged desire to "dispose" of "intangible assets."  11 We note that we need not address the merits of Petitioners' claim regarding Sections 1001 and 1016, namely that because those two sections make no distinction between the basis and gain rules for capital or ordinary assets, "there is a 'capital account' for all assets."  -13- received in lieu of compensation and, as such, are fully included as gross income under Section 61. C. Deductibility of the Legal Fee C. Deductibility of the Legal Fee Having determined that the Legal Fee is included in gross income under Section 61, we turn to the question of its deductibility. It is well-settled that any accessions to wealth received by a taxpayer are included in his gross income, unless the taxpayer can demonstrate that the amount received falls within a specific statutory exclusion. Commissioner v. Glenshaw ____________ ________ Glass, 348 U.S. 426, 431, reh'g denied, 349 U.S. 925 (1955). _____ ____________ Section 162(a) provides that there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 62(a)(1) adds that expenses falling within Section 162(a) are deducted from gross income to arrive at "adjusted gross income," explicitly excluding expenses incurred _________ by a taxpayer engaged in the trade or business of the performance of services as an employee.12 Petitioners argue that, if the entire settlement proceeds allocable to Counts I and II constitute gross income to  ____________________ 12 Section 62(a)(1) provides in pertinent part,  The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does _______________________________ not consist of the performance of _________________________________________ services by the taxpayer as an employee.  _______________________________________ 26 U.S.C. Section 62(a)(1) (1988 & Supp. 1991) (emphasis added). -14- him under Section 61(a) of the Code, the Legal Fee should be treated as an "above the line" trade or business expense under Section 162(a) of the Code, rather than a "miscellaneous itemized deduction" under Section 63, as the Commissioner found and the Tax Court held. The crux of Petitioners' argument is that the "employee" limitations of Section 62(a)(1) do not apply, because Taxpayer was not Young's employee during 1989. Pointing to the fact that Taxpayer was employed in 1989 as an independent management consultant, they maintain that the Tax Court's application of Section 62(a)(1) is based on its erroneous finding that Taxpayer was "in the business of performing services of an employee" during 1989. We disagree with Petitioners. First, we reiterate that we find no clear error in the Tax Court's determination finding that Taxpayer was "in the business of performing services of an employee" during 1989.13 Second, we look to the plain language of Section 62(a)(1). As the Tax Court correctly noted, no distinction is made in Section 62(a)(1) between present and former employees if the expenses originated in the trade or business of being an employee.14 Thus, the fact that Taxpayer  ____________________ 13 It is well-settled that an individual may engage in the trade or business of rendering services as an employee. McKay v. _____ Commissioner, 102 T.C. 465, 489 (1994), appeal docketed, No. 94- ____________ _______________ 41189 (5th Cir. 1995) (collecting cases).  14 See McKay, 102 T.C. at 489 (holding corporate executive's ___ _____ post-employment litigation expenses incurred in suit against former employer were incurred in trade or business, and were deductible, if at all, under Section 162); McKeague v. United ________ ______ States, 12 Cl. Ct. 671, 674-77 (1987) (finding, inter alia, that ______ __________ former employee's litigation expenses which originated in trade -15- was not in actuality Young's employee in 1989 does not alter the controlling fact that the lawsuit and the ensuing settlement directly resulted from his employment with Young. Petitioners argue in vain that Taxpayer should not be "saddled with employee status" because his new trade or business as an independent management consultant indicates a "break" from his former employment with Young (Appellants' Brief, p. 40). Equally in vain, they argue that the "[l]awsuit should be looked at as the ordinary and necessary expense incurred by an independent businessman to bring suit when contracts are breached." (Appellants' Brief, p. 40). As the Tax Court correctly found, there is absolutely no connection between Taxpayer's lawsuit and his independent management consulting business. Instead, Taxpayer's lawsuit was "directly connected with, or . . . proximately resulted from" his employment at Young.15 Kornhauser, 276 U.S. at 153. It is under this rubric that __________  ____________________ or business were deductible as ordinary expenses under Section 162), aff'd without published opinion, 852 F.2d 1294 (Fed. Cir. _______________________________ 1988); cf. Kornhauser v. United States, 276 U.S. 145, 153 (1928) ___ __________ _____________ (stating that where suit against a taxpayer is directly connected with, or proximately resulted from, his business, expense incurred is a business expense). 15 We note also that on the "Disclosure Under Reg. Sec. 1.6661," Petitioners' tax preparer describes the lawsuit against Young as being for "age discrimination, back wages and retirement benefits." (Appellants' Appendix, p. 68). We also note that the releases executed pursuant to the Settlement Agreement regard "[a]ll claims arising out of [Taxpayer's] employment by [Young] and the cessation of [Taxpayer's] employment" and "[a]ll claims which were or could have been asserted by [Taxpayer] in the Lawsuit entitled J. Kenneth Alexander v. W.F. Young, Inc., ______________________ __________________ Hampden Superior Court Civil Action No. 88-243." (Appellants' Appendix, p. 98). -16- Taxpayer is considered to be in the business of being Young's "employee" for purposes of falling within the Section 62(a)(1) limitation.16 In another attempt to circumvent the application of Section 62(a)(1), Petitioners argue that, if we attribute employee status to Taxpayer, we should find that Young's direct payment of the settlement proceeds to R&W (by way of joint checks payable to Taxpayer and R&W as joint payees) qualifies as a reimbursement arrangement within the meaning of Section 62(a)(2)(A). That section provides that reimbursed employee expenses are permitted to be deducted from gross income when arriving at adjusted gross income.17 Petitioners contend that  ____________________ 16 Similarly irrelevant is Petitioners' argument that the Legal Fee was not expended for the benefit of Young's business and was in fact detrimental to Young. See McKay, 102 T.C. at 488, n.23 ___ _____ (noting that "[i]t makes no difference whether the employee is defending himself in actions that challenge his activities as a corporate officer or the employee is bringing a suit against his former employer."); see also McKeague, 12 Cl. Ct. 671 (involving ________ ________ litigation expenses which were not incurred for benefit of taxpayer's employer).  17 Section 62(a)(2)(A) provides, in pertinent part, that in determining adjusted gross income there will be allowed, [t]he deductions allowed by part VI (section 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other _______________________________ expense allowance arrangement with his _________________________________________ employer. The fact that the ________ reimbursement may be provided by a third party shall not be determinative of whether or not the preceding sentence applies. -17- Young's direct payment arrangement was effectively providing for the payment of the Legal Fee pursuant to Section 62(a)(2)(A) in light of the fact that R&W had a statutory lien under Massachusetts law for the payment of the Legal Fee. See Mass. ___ Gen. L. ch. 221, sec. 50 (1986). This argument fails because it is utterly without support in the record. As the Tax Court correctly found, Petitioners have not proven that Taxpayer was under a "reimbursement or other expense allowance arrangement" with Young for Taxpayer's Legal Fee. Contrary to Petitioners' insistence, the fact that the record shows Young's direct and joint payment is "standard operating procedure" in all types of litigation does not support the requisite finding of a reimbursement or other "arrangement" or alter the fact that both Young and Taxpayer were responsible for their respective legal costs. Finally, we also note that the settlement agreement itself makes no mention of attorney's fees and the Taxpayer's lawsuit was dismissed "without prejudice and without costs." Thus, we reject Petitioners' argument that Section 62(a)(2)(A) applies, and reaffirm our conclusion that the Legal Fee falls squarely within Section 62(a)(1). Having determined that Section 62's employee limitation applies, we turn to its effect on Taxpayer's Legal Fee. Expenses  ____________________ 26 U.S.C. 62 (1988 & Supp. 1991) (emphasis added); see H.R. ___ Conf. Rep. No. 998, 100th Cong., 2d Sess. at 204. (allowing reimbursed expenses only if incurred pursuant to a reimbursement or other expense allowance arrangement requiring employees substantiate expenses covered thereunder to the person providing the reimbursement). -18- excluded under the Section 62(a)(1) limitation are treated as "itemized deductions" under Section 63, such that they are subtracted from adjusted gross income in computing the taxpayer's "taxable income." See I.R.C. 63(d) (stating that "itemized ___ deductions" include all deductions not "allowable in arriving at adjusted gross income" and the deduction for personal exemptions provided by Section 151). In turn, under Section 67(b) "miscellaneous itemized deductions" -- which are defined as all itemized deductions other than those specifically enumerated therein -- are subject to a 2-percent floor, such that they are allowable "only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income." Because trade or business expenses subject to Section 62(a)(1), such as Taxpayer's Legal Fee, are not among the deductions listed in Section 67(b), statutory construction leads to the conclusion that they are miscellaneous itemized deductions subject to the 2- percent floor. See McKay, 102 T.C. at 493;18 cf. In Re Black, ___ _____ ___ ___________ 131 B.R. 106, 108 (E.D. Ark. 1991) (discussing the deductibility of non-reimbursed employee business expenses). Upon de novo review, and finding no merit to _________ Petitioners' other arguments, we therefore affirm the Tax Court's determination that the Legal Fee is properly deducted "below the line."  ____________________ 18 We note that, without advancing much by way of argument, Petitioners urge us not to follow McKay (and its statutory _____ analysis), claiming that it is wrongly decided. We merely add that, upon de novo review, we agree with McKay's statutory _______ _____ analysis, and find the case on point.  -19- D. Applicability of Alternative Minimum Tax D. Applicability of Alternative Minimum Tax Petitioners do not dispute that the treatment of Taxpayer's Legal Fee as a miscellaneous itemized deduction triggers the application of the Alternative Minimum Tax (the "AMT") under Sections 55 and 56;19 nor do they deny that, under Section 56(b)(1)(A)(i), they are not permitted to deduct the Legal Fee as a miscellaneous itemized deduction (as defined in Section 67(b)) in computing the AMT. Petitioners do argue, however, that the Commissioner's "stretching" interpretation of Section 62(a)(1), adopted by the Tax Court and, now, this Court, results in "gross injustice, inequity and lack of uniformity in the treatment of taxpayers similarly situated." (Appellants' Brief, p. 24). We recognize that, because the amounts involved trigger the AMT and, thus, Taxpayer's deficiency, the outcome smacks of injustice because Taxpayer is effectively robbed of any benefit of the Legal Fee's below the line treatment. While unfortunate for Petitioners here, we disagree that there is inequality of treatment as compared to similarly situated taxpayers. Although it may seem otherwise, in reality Petitioners have not been denied their below the line deduction of the Legal Fee. The AMT was enacted to "ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits." S. Rep. No. 313, 99th Cong., 2d Sess. at 518, 1986-3 C.B. (Vol. 3) v., 518; see ___  ____________________ 19 26 U.S.C. 55 and 56 (1988 & Supp. 1991). -20- also S. Rep. No. 1263, 95th Cong., 2d Sess., 1978-1 C.B. (Vol. 1) ____ 315, 499. It is well established that equitable arguments cannot overcome the plain meaning of the statute. See Okin v. ___ ____ Commissioner, 808 F.2d 1338, 1340-42 (discussing the purpose and ____________ constitutionality of the AMT), cert. denied, 484 U.S. 802 (1987); ____________ Warfield v. Commissioner, 84 T.C. 179, 184 (1985) (rejecting ________ ____________ argument that imposition of the AMT was unfair because income- producing transaction was only a "one-time deal;" "[t]here is no justification for creating such an exception to the express terms" of Section 55); see also Rawlins v. Commissioner, 1995 WL ________ _______ ____________ 610605, at *5-8, 70 T.C.M. (CCH) 1046, ____ (1995). Petitioners are bound by the tax consequences of the settlement as it actually occurred. Id. at 184. __ III. CONCLUSION III. CONCLUSION For the foregoing reasons, we affirm the Tax Court's decision and uphold the Commissioner's finding of Petitioners' deficiency. The judgment of the Tax Court is affirmed. affirmed. ________ -21-