ALBERT AND CAROL TUCKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7971–75.     Filed February 8, 1978.

Albert Tucker, pro se.

*Alan J. Garfunkel* and *Theodore J. Kletnick,* for the respondent.

OPINION

WILBUR, *Judge:* Respondent determined a deficiency of $433.94 in petitioners' Federal income tax for the taxable year 1973.

The two issues presented for our determination are: (1) Whether $1,509, which was withheld from petitioner Carol Tucker's salary under State law for her participation in a teacher's strike, is includable in petitioners' gross income for Federal income tax purposes during taxable year 1973, and if so, (2) whether petitioners are denied a deduction for this amount under section 162(f).[1]

The parties stipulated all of the facts and submitted the case under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners are Albert Tucker and Carol Tucker (hereinafter referred to as Carol), husband and wife, whose legal residence at the filing of the petition herein was in the town of New Castle in Westchester County, N. Y. Petitioners filed their joint Federal income tax return for the taxable year 1973, using the cash basis of accounting, with the District Director of Internal Revenue, Manhattan, N. Y.

During 1973, while she was employed as a teacher for the Harrison Central School District, (hereinafter referred to as school district), Carol engaged in a 21-day strike. The strike in which Carol engaged was illegal under New York's Taylor Law which states, in part, that:

> No public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage, or condone a strike. [N.Y. Civ. Serv. Law sec. 210(1) (McKinney 1973).]

The principal sanction imposed upon those employees deter-

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise stated.

mined to have violated this law is provided by N.Y. Civil Service Law section 210 (2)(g) (McKinney 1973):

Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such [striking] public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision; such rate of pay to be computed as of the time of such violation. In computing such deduction, credit shall be allowed for amounts already withheld from such employee's compensation on account of his absence from work or other withholding of services on such day or days. * * *

The statute provides for notice to the employee by the chief executive officer and the opportunity for review of his determination by a hearing officer. Judicial review of the hearing officer's determination is also provided. N.Y. Civ. Serv. Law sec. 210(2)(h) (McKinney 1973). See *Lawson v. Board of Education of Vestal Central School District No. 1*, 35 App. Div. 2d 878, 315 N.Y.S. 2d 877, 879 3d Dept. (1970), appeal dismissed 404 U.S. 907 (1971).

While she was on strike, Carol was, of course, not paid the $1,509 she would have earned had she not been on strike. Additionally, in accordance with this State law the school district deducted from Carol's gross pay for subsequent periods in 1973 after she had returned to work a total of $1,509.[2] These deductions from her pay were shown on the "Statement of Earnings and Deductions" sent to Carol by the school district, and this amount was included in "wages, tips, and other compensation" on the 1973 W–2 Form the school district sent her. Albert Tucker contacted the payroll supervisor of the school district and asked him to either pay the $1,509 previously withheld from Carol's salary or to issue her a revised 1973 W–2 Form eliminating this amount, but the payroll supervisor refused. Petitioners reported this $1,509 as income on their 1973 Federal income tax return, and deducted it on the return as an employee business expense. Respondent determined a deficiency based on the conclusion that this $1,509 represented taxable income during 1973, and that section 162(f) prohibited its deduction.

---

[2]Actually, the statute imposes a penalty of $3,018 in Carol's case (twice her daily rate of pay for each strike day) but credits her with $1,509 (her rate of pay for each strike day) since she was not paid for any of the days she was on strike.

Respondent's position with respect to the first issue is summarized in Rev. Rul. 76–130, 1976–1 C.B. 16. Basically respondent contends that Carol incurred a penalty as a result of the strike, and that the obligation to pay the penalty was discharged out of her normal salary when she returned to work, thus producing taxable income. We agree with this conclusion.

Section 61(a) defines "gross income" broadly, and specifically includes both "compensation for services" and "income from discharge of indebtedness" within its meaning. It is clear that when Carol engaged in an illegal strike she incurred an indebtedness because of the penalty specified by the Taylor Law. This debt was satisfied when, upon her return to work, the school district withheld a portion of her normal salary corresponding to the amount of her indebtedness. This procedure is analogous to a garnishment of wages commonly used by creditors as a collection mechanism. It resulted in the immediate recognition of income under the principle that, where "an individual performs services for a creditor, who in consideration thereof cancels the debt, the debtor realizes income in the amount of the debt as compensation for his services." Sec. 1.61–12(a), Income Tax Regs. The fact that the fine was deducted directly from Carol's salary rather than collected from her after payment of her salary is irrelevant.

In the employment situation we have before us, payment of salary to the employee as compensation for services followed by repayment to the * * * [employer] in order to satisfy a debt may be short-circuited by the accounting device of crediting the salary against the debt, without any cash changing hands. By either device, the taxpayer receives income. * * * [*Newmark v. Commissioner*, 311 F.2d 913, 915 (2d Cir. 1962), affg. a Memorandum Opinion of this Court.]

Petitioners base their position with respect to this first issue upon the claim of right doctrine as articulated in section 1.451–2(a), Income Tax Regs.:

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restriction. * * *

Basically they contended that, since Carol never actually did or

could receive any part of the $1,509 in cash, she never received it for Federal income tax purposes.

However, this case does not really involve an issue of constructive receipt. Contrary to petitioners' contention herein, the right to receive compensation in the form of cash is not a prerequisite to the receipt of taxable income. See *Cohen v. Commissioner*, 63 T.C. 267, 283 (1974), affd. per curiam 543 F.2d 725 (9th Cir. 1976), petition for cert. filed Feb. 28, 1977. Petitioners' argument ignores the fact that, when Carol's debt to the State was satisfied, she received an immediate economic benefit equal to the penalty that was paid.[3]

The penalty was imposed pursuant to a statute requiring a determination that she engaged in an illegal strike on each of the days for which the penalty was imposed. Both administrative and judicial review were available as a part of these procedures. When a portion of her subsequent earnings was used to pay the penalty she incurred, she was in receipt of taxable income.

Respondent's position with respect to the second issue is also summarized in Rev. Rul. 76–130, 1976–1 C.B. 16. Basically respondent contends that the $1,509 in issue constitutes the payment of a fine and hence is nondeductible under section 162(f).

Section 162(f) provides that:

FINES AND PENALTIES.—No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

Section 1.162–21(a), Income Tax Regs., further states that this section applies to State civil fines as well as to criminal sanctions.[4]

The Taylor Act (also known as the Public Employees' Fair Employment Act), N.Y. Civ. Serv. Law secs. 200–214 (McKinney 1973), was enacted in 1967 pursuant to recommendations of a

---

[3]At bottom, petitioners seem to believe that their lack of control over the earnings used to pay the fine justifies the exclusion of the earnings from gross income. However, this is inherent in the nature of a fine and the statutory mechanism provided in this instance for its payment.

[4]The legislative history can be read to raise the issue of whether sec. 162(f) is applicable to civil fines. See S. Rept. 91–552 (1969), 1969–3 C.B. 423, 596–598, and S. Rept. 92–437 (1971), 1972–1 C.B. 559, 600. We need not resolve any potential conflict in the legislative history (see *Santa Barbara Club v. Commissioner*, 68 T.C. 200 (1977)), since we are convinced that Congress in 1969 simply intended to codify existing law. For an excellent analysis of this and other problems under sec. 162(f), see J. Taggart, "Fines, Penalties, Bribes, and Damage Payments and Recoveries," 25 Tax L. Rev. 611 (1970). See *May v. Commissioner*, 65 T.C. 1114 (1976); *Uhlenbrock v. Commissioner*, 67 T.C. 818 (1977).

distinguished commission appointed to examine problems with existing New York law relating to public employee labor disputes. See W. McHugh, "New York's Experiment in Public Employee Relations: The Public Employee's Fair Employment Act," 32 Alb. L. Rev. 58 (1967), and T. Kheel, "The Taylor Law: A Critical Examination of its Virtues and Defects," 20 Syracuse L. Rev. 181 (1968). Section 200 states the policy of the Act which is, in part, to protect the public by insuring orderly and uninterrupted governmental functions. It states that this policy can best be served by, inter alia, "continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibitions."

Initial dissatisfaction with the new law resulted in the Governor reconvening the Taylor Commission, and the legislature enacting additional provisions in 1969. These provisions are incorporated in section 210, and are the ones that concern us herein.

A legislative memorandum of the Rules Committee of the New York State Senate described the purpose of the 1969 amendments as providing "a fair and expeditious procedure for determining which individual employees engaged in a strike and a penalty for such participation of the loss of one day's pay (in addition to the pay lost while absent because of the strike) and a probation for a term of one year during which the employee serves without tenure." The memorandum noted that the objective was to provide "more effective deterrents against strikes." The memorandum specifically states:

It is clear, as the Taylor Committee has noted, the proceedings for individual misconduct have not been undertaken to the extent necessary to serve as an effective deterrent to the participation in an illegal strike.

Presently the only disciplinary procedures which place personal responsibility on the employee who engaged in an unlawful strike are found in Section 75 of the Civil Service Law. This section, however, was designed primarily to handle individual cases of misconduct. The use of such procedures as a penalty for a strike potentially involving large numbers of employees imposes upon both the employer and the employee a totally unreasonable burden, wasteful in time and, therefore, unfair to both parties.

Accordingly, this bill provides a new procedure for the expeditious determination of participation in a strike and the imposition of penalties—well defined in advance so that a public employee will be fully aware of the individual consequences of his action and the certainty that penalties will be fairly imposed without unreasonable delay. [1969 N.Y. Laws 2365, 2366-2367 (2 McKinney).]

Additionally, at several different points the Rules Committee referred to the sanction imposed as a "penalty."

The sanction imposed herein on Carol has been termed a "civil penalty" by the New York courts. *People v. Vizzini,* 78 Misc.2d 1040, 359 N.Y.S.2d 143, 150 (N.Y. County Sup. Ct. 1974). It reflects a deeply and consistently held policy of that State with respect to the proper relationship between the State and local governments on one hand and their employees on the other.[5] To allow a deduction herein would frustrate that policy. An individual whose income (either alone or when combined with his spouse's on a joint return) is taxed at a marginal rate of 25 percent, would incur a net after tax penalty equal to 3 days at the statutory rate for being on strike for 4 days. Certainly teachers are sophisticated enough, particularly when informed by their unions and teachers' associations, to be aware of these basic economic facts. Section 162(f) codifies a long history of disallowing penalties under circumstances in principal analogous to those herein, and petitioners' deduction must therefore be disallowed.[6]

We have considered several arguments that might have been advanced on petitioners' behalf. It could be suggested that the New York statute simply requires a day's service without pay for each day of the strike before compensatory service begins again, much as it requires a year's service without tenure prior to regaining tenured status. In this sense, it might be viewed as an incident of the employment relationship, incorporated in the Civil Service laws because they govern public employment within the State.

However, we do not believe this was the intent of the New York State law. A careful reading of the statute makes it clear

---

[5]See *Wilson v. Board of Education, Union Fr. Sch. Dist. No. 23,* 39 App. Div.2d 965, 333 N.Y.S.2d 868 (2d Dept. 1972), modified 32 N.Y.2d 634, 295 N.E.2d 387, 342 N.Y.S.2d 659 (1973). See generally S. Wolk, "Public Employee Strikes—A Survey of the Condon-Wadlin Acts," 13 N.Y. Law Forum 69 (1967).

[6]*United States v. Jaffray,* 97 F.2d 488, 494 (8th Cir. 1938) stated that:

"The [Tax Court] has consistently refused to treat exactions made by way of punishment for derelictions as ordinary and necessary expenses of a business. * * * [Citations omitted.]"

In citing *Jaffray* 20 years later the Supreme Court stated that:

"Deduction of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the "sting" of the penalty prescribed by the state legislature. [*Tank Truck Rentals v. Commissioner,* 356 U.S. 30, 35, 36 (1958). Fn. ref. omitted.]"

Historically, this has been considered the rationale for the rule, and despite many differences in *Tank Truck Rentals* from this case before us, we believe the reasoning is applicable herein.

that any raises during the strike period (due to annually scheduled increments, graduate credits, or cost of living increases) will be included in Carol's subsequent compensation, and the amount of the fine withheld will be based on the old rate of pay applicable during the strike period. For example, if a penalty is withheld in September for a strike occurring the previous June, the penalty is based on the rate of compensation for the prior school year and is withheld from Carol's total compensation, including any increases applicable in the new year. Additionally, it appears that any benefits, apparently including retirement and medical benefits that a teacher may be entitled to, continue to accrue during the pay periods from which the fine is deducted.[7]

It also appears that the only statutory mechanism for collecting the fine is through withholding from a teacher's future compensation. Thus, if a teacher should transfer to another State or leave the teaching profession after a strike, the penalty could apparently be avoided. However, this presents the teachers with a Hobson's choice: either they lose their job or incur the penalty. The State apparently felt that imposing the penalty in this context was more than sufficient to achieve the strong public policy objectives of the Taylor Act. Certainly, the payment of the penalty through wage withholding by those who return to work is not any less a penalty because they have foregone the option of seeking employment in another State or another profession.

*Decision will be entered for the respondent.*

---

[7]Carol's penalty was withheld over five pay periods ($359.30 for each of four periods, $71.86 for the fifth period). Her gross pay was at least twice the amount withheld in each pay period.