T.C. Memo. 1996-556


UNITED STATES TAX COURT


ALFRED P. DUFFY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6723-93.                    Filed December 23, 1996.


Alfred P. Duffy, pro se.

<u>Judith Wilkie</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


ARMEN, <u>Special Trial Judge</u>:  This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1990 in the amount of $4,047. The deficiency includes the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans.

After a concession by petitioner,[2] the issues for decision are as follows:

(1) Whether petitioner received unreported wages in the amount of $10,899; and

(2) whether petitioner is liable for the additional tax imposed by section 72(t).

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioner resided in the State of New York at the time that his petition was filed with the Court.

Petitioner's Employment

In June 1989, petitioner signed a 5-year contract with the Poughkeepsie City School District (the school district) to serve as assistant superintendent. In September 1989, petitioner was

---

[2] In the notice of deficiency, respondent determined that petitioner failed to report a distribution from American Capital Trust Co. in the amount of $2,410.91. Petitioner did not raise this issue in his pleadings, nor did he address it at trial. Accordingly, this issue is deemed to be conceded by petitioner. Rules 34(b)(4), 142(a).

suspended with pay based on allegations that he had mishandled the school district's funds during the 1988-89 academic year.[3]

In September 1990, the internal claims auditor of the school district (the auditor) determined that petitioner had received travel advances in excess of actual expenditures for the 1988-89 academic year. Thereafter, and pursuant to New York State law,[4] the school district began to withhold on a biweekly basis the entire amount of petitioner's net wages in an effort to recoup the excess travel advances. Thus, from late September through the end of the year, petitioner did not receive any paychecks from the school district.

Pursuant to his employment contract with the school district, petitioner was entitled to receive wages in 1990 in the amount of $66,254.66. The school district, however, withheld from that amount a total of $10,898.90.

From the beginning of his dispute with the school district, petitioner maintained that the money advanced to him represented reimbursement for legitimate travel expenses incurred by him in

---

[3] Although the record is not clear on this matter, it would appear that petitioner had worked for the school district before signing the 5-year contract in June 1989.

[4] New York Gen. Mun. Law, sec. 77-b(6) (1986), provides as follows:

> "Where * * * an employee fails to return [an] excess advance * * * the municipality shall deduct the amount of such unreturned excess advance from the salary or other money owed the * * * employee by the municipality."

connection with his official duties. Accordingly, in late September or early October 1990, petitioner commenced a court proceeding (the court proceeding) against the school district in the Supreme Court of Dutchess County, New York (the trial court). In the court proceeding, petitioner sought the return of net wages already withheld and to enjoin the school district from withholding net wages in the future.

In January 1991, the trial court dismissed the court proceeding. Petitioner then appealed to the Appellate Division of the Supreme Court of New York (the Appellate Division). In May 1992, the Appellate Division affirmed the trial court. Petitioner did not pursue any further appeal.

Petitioner's Annuity Contract

Petitioner maintained an annuity contract described in section 403(b) with American Capital Trust Co. (the American Capital account). On or about February 5, 1990, petitioner requested a distribution of the entire amount in his account with American Capital because of "financial hardship". On or about February 13, 1990, petitioner received a distribution in the amount of $2,410.91 from his American Capital account. Petitioner was 44 years old at the time that he received the distribution.

Petitioner's 1990 Income Tax Return

Petitioner filed a Federal income tax return (Form 1040) for 1990. On his return, petitioner computed his tax liability using the cash receipts and disbursements method of accounting.

Petitioner received a Form W-2 from the school district disclosing the payment of wages in 1990 in the amount of $66,254.66. Petitioner did not attach such form to his return. Rather, he attached Form 4852 (Substitute for Form W-2). On such form, as well as on the return itself, petitioner reported wages in the amount of $55,355.76; i.e., $66,254.66 less net wages withheld in the amount of $10,898.90.

Petitioner did not report the distribution from his American Capital account on his return for 1990.

Respondent's Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner failed to report wages in the amount of $10,899. Respondent also determined that the distribution from petitioner's American Capital account was includable in petitioner's gross income.[5] As a corollary, respondent determined that petitioner was liable for the 10-percent additional tax imposed by section 72(t).

OPINION

The issues for decision are whether petitioner failed to report wages in the amount of $10,899 and whether petitioner is

---

[5] See supra note 2 regarding petitioner's concession related to this distribution.

liable for the 10-percent additional tax under section 72(t). We first consider whether petitioner received unreported wages.

Issue (1): Unreported Wages

For a taxpayer who uses the cash receipts and disbursements method of accounting, an item is includable in gross income in the year in which the item is actually or constructively received. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs. Thus:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time * * * . However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. [Sec. 1.451-2(a), Income Tax Regs.]

Respondent does not contend that petitioner actually received the net wages withheld by the school district in 1990. Rather, respondent contends that petitioner constructively received such amount. Specifically, respondent argues that petitioner incurred a debt as a result of the auditor's determination that petitioner received excess travel advances and that such debt was discharged through the withholding of net wages. From this, respondent concludes that petitioner constructively received the net wages withheld by the school district in 1990.

We disagree with respondent. The record demonstrates that from the time of the auditor's determination in September 1990, petitioner has continuously and vigorously denied that he was

liable for excess travel advances. Specifically, petitioner commenced an action in the trial court, and, following the dismissal of the action in January 1991, he appealed to the Appellate Division. The Appellate Division ultimately affirmed the trial court, but not until May 1992. Thus, petitioner's dispute with the school district was not resolved in 1990, the taxable year in issue.

Because there existed a genuine dispute between petitioner and the school district in 1990 regarding petitioner's liability for excess travel advances, it cannot be said that in 1990, petitioner constructively received the net wages withheld by the school district during that year. Cf. N. Sobel, Inc. v. Commissioner, 40 B.T.A. 1263 (1939).

Respondent cites Tucker v. Commissioner, 69 T.C. 675 (1978), Kuntz v. Commissioner, T.C. Memo. 1992-650, and Kasey v. Commissioner, T.C. Memo. 1976-266, in support of her position. As discussed below, respondent's reliance on these cases is misplaced.

In Tucker v. Commissioner, supra, the taxpayer was a teacher who engaged in an illegal strike against a school district. The school district, acting pursuant to a State law that imposed a monetary penalty on persons participating in illegal strikes, withheld the penalty from the taxpayer's wages. We held that the withholding of the penalty resulted in income to the taxpayer. We based our holding on the fact that the taxpayer incurred a

debt when she participated in the strike and that the penalty withheld from her wages extinguished such debt.

We think that petitioner's circumstances are different from those of the taxpayer in Tucker v. Commissioner, supra. In the latter case, the taxpayer did not dispute the fact that she had violated State law and incurred a debt as a result of such violation. Nor did the taxpayer dispute the fact that the withholding of the penalty from her wages satisfied such debt. In the present case, however, petitioner vigorously disputed the auditor's determination that he was liable to the school district for excess advances, and the parties' dispute was not resolved by the New York courts by the end of 1990.

Similarly, respondent's reliance on Kuntz v. Commissioner, supra, and Kasey v. Commissioner, supra, is also misplaced. In those cases, we held that the taxpayers constructively received income to which they were entitled but which was garnished and remitted to judgment creditors. In neither case is there any indication that the taxpayers disputed their liability. Thus, these cases are also distinguishable from the present one.

In view of the foregoing, we hold that petitioner is not taxable, in 1990, on the net wages withheld by the school district during that year. Because 1990 is the only year before us, we need not, and do not, decide whether the net wages are taxable in some other year.

Issue (2): Section 72(t)

We turn next to respondent's determination that petitioner is liable for the 10-percent additional tax imposed by section 72(t).

Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans.  Paragraph (1), which imposes the tax, provides in relevant part as follows:

> (1)  Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

As relevant herein, section 4974(c) defines a qualified employer plan as "an annuity contract described in section 403(b)".  Sec. 4974(c)(3).

The 10-percent additional tax does not apply to certain distributions.  Sec. 72(t)(2).  For example, section 72(t)(2) provides that the 10-percent additional tax does not apply to distributions that are:  (1) Made on or after the date on which the taxpayer attains age 59-1/2; (2) made to a beneficiary (or to the estate of the taxpayer) on or after the death of the taxpayer; (3) attributable to the taxpayer's being disabled; or (4) made to a taxpayer after separation from service after attainment of age 55.  Sec. 72(t)(2)(A)(i), (ii), (iii), and (v).  Because none of the exceptions of section 72(t)(2) applies to relieve petitioner of the additional tax, we sustain respondent's determination that petitioner is liable for such tax.

<u>Conclusion</u>

To reflect our disposition of the disputed issues, as well as petitioner's concession,

<u>Decision will be entered</u>

<u>under Rule 155.</u>