T.C. Memo. 2001-252

UNITED STATES TAX COURT

JOSEPHINE VELASCO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16368-99.                    Filed September 21, 2001.

<u>Arsen Kashkashian, Jr.</u>, for petitioner.

<u>Russell K. Stewart</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a $22,011 deficiency and additions to tax under sections 6651(a)(1) and (2) and 6654 in the amounts of $4,883, $2,930, and $1,165, respectively, with respect to petitioner's 1996 Federal income tax.[1]

---

[1]    All section references are to the Internal Revenue Code in effect for 1996.

The sole issue in dispute concerns the amount of commission income petitioner must report as taxable income in 1996.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.

At the time petitioner filed her petition contesting respondent's determinations, she resided in Newtown, Pennsylvania.

From 1990 to the year at issue, petitioner was a mortgage loan officer for a bank. From mid-1994 to 1997, petitioner also worked part time as a real estate broker for the M. Riccardi Agency, owned by Michael Riccardi (Mr. Riccardi).

Before November 14, 1994, petitioner and her spouse owned, and occupied as their residence, property located at 227 Aspen Road, Yardley, Pennsylvania (the Aspen Road property). In 1994, petitioner and her husband encountered financial problems, and the bank holding the mortgage on the Aspen Road property threatened to foreclose on the property. As a consequence thereof, petitioner approached Mr. Riccardi and suggested that he purchase the Aspen Road property from the bank holding the mortgage. Mr. Riccardi agreed to do so. He made an offer to purchase the Aspen Road property for $150,000; the bank rejected this offer. Thereafter, the bank foreclosed on the Aspen Road property, and the property

was ultimately transferred to the Federal National Mortgage Association (Fannie Mae).

After the transfer of the Aspen Road property to Fannie Mae, petitioner again contacted Mr. Riccardi. Petitioner told Mr. Riccardi that if he purchased the Aspen Road property, she would "take care of all expenses, maintain the property, and that after a period of two years would either buy the property back or [they] would sell it and split the profits, if there were any." Mr. Riccardi understood that he would receive a minimum profit of $20,000. Relying on petitioner's promises, Mr. Riccardi offered Fannie Mae $170,000 for the Aspen Road property; this offer was accepted.

On November 14, 1994, Mr. Riccardi and petitioner signed a lease agreement that permitted petitioner to occupy and use the Aspen Road property for the 2-year period beginning January 1, 1995, and ending December 31, 1996. The lease agreement required petitioner to pay Mr. Riccardi a basic rent of $1,800 a month and an amount equal to any increases in real estate taxes, fire insurance premiums, and water and sewer charges. The lease also required petitioner to reimburse Mr. Riccardi for any damages or costs that he might incur as a result of petitioner's breach of her obligations under the lease.

Because of petitioner's continued financial difficulties, she failed to comply with her obligations under the lease. She did not

pay any rent in January or February 1995. Mr. Riccardi could not afford to pay the mortgage and taxes on the Aspen Road property without petitioner's rent payment. He used a line of credit to pay the mortgage and taxes. After petitioner failed to pay the first month's rent by February 1, 1995, Mr. Riccardi decided to sell the Aspen Road property and listed it for sale. Petitioner paid $1,000 in March, $701.68 in May, and $1,000 in June 1995.

In May or June 1995, petitioner listed a shopping center for sale with the M. Riccardi Agency. Mr. Riccardi thought he would be able to recover the expenses he had incurred for the Aspen Road property from petitioner's share of the commission on the sale of the shopping center. Therefore, he took the Aspen Road property off the market. Petitioner paid $1,000 of rent in each of the months of July, August, and November 1995. She did not pay any rent in 1996.

Mr. Riccardi kept a log of the money he spent on the Aspen Road property, including the downpayment on the purchase price, closing costs, mortgage payments, taxes, costs associated with his attempts to sell the property, and maintenance and repair costs. The log shows that by the end of March 1996, the total expenses exceeded the $5,701.68 of rent petitioner had paid by $22,300.

The shopping center sold in 1996; it was the only property petitioner sold for Mr. Riccardi in 1996. The Riccardi Agency received its $121,000 commission on March 28, 1996. Mr. Riccardi

allocated one-half ($60,500) of the commission to petitioner as her share.  Mr. Riccardi paid petitioner $14,000 on March 29, 1996.  At that time he told her that $46,500 of the balance of her commission would be retained by him and used to offset the expenses he had incurred in excess of the rent petitioner had paid and the $20,000 profit he expected from the Aspen Road Property.  He paid petitioner an additional $6,000 on August 13, 1996.

In May or June 1996, Mr. Riccardi again listed the Aspen Road property for sale.  Mr. Riccardi sold the Aspen Road property before the end of 1996.  Petitioner was required to vacate the Aspen Road property before settlement on the sale of the house.  She moved out of the property by the end of the year, after Mr. Riccardi agreed to pay her moving expenses.  As a result of petitioner's failure to pay the monthly rent on the Aspen Road property, Mr. Riccardi incurred more than $3,000 of additional interest expenses and other costs.  In January 1997, Mr. Riccardi paid $5,998.50 of petitioner's moving expenses.

The M. Riccardi Agency issued a Form 1099-Misc, Miscellaneous Income, to petitioner reporting $60,500 of nonemployee compensation in 1996.  In addition to the commission on the sale of the shopping center, petitioner earned $6,199 in wages and $14 of interest.

Petitioner did not file a Federal income tax return for 1996.  Respondent issued a notice of deficiency to petitioner based on Forms 1099 and W-2, Wage and Tax Statement, and other documents

received from third parties reflecting their payments to petitioner in 1996.

OPINION

Petitioner does not contest respondent's determinations as set forth in the notice of deficiency, including the additions to tax, except for $40,500 of the $60,500 reflected in a Form 1099 issued to petitioner by the M. Riccardi Agency and used by respondent in his determination of petitioner's income. Respondent contends that petitioner had $40,500 of income in 1996 either from the discharge of indebtedness she owed Mr. Riccardi or by the constructive receipt of the commission on the sale of the shopping center. We agree with respondent.

Section 61(a) defines "gross income" broadly, and specifically includes both "compensation for services" and "income from discharge of indebtedness" within its meaning. It is well settled that where an employee owes a debt to the employer, crediting the salary earned by the employee against the employee's debt to the employer, without any cash changing hands, is income to the employee. See, e.g., Newmark v. Commissioner, 311 F.2d 913, 915 (2d Cir. 1962) (citing Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929)), affg. T.C. Memo. 1961-285; Tucker v. Commissioner, 69 T.C. 675 (1978); Cox v. Commissioner, T.C. Memo. 1996-241; Phillips v. Commissioner, T.C. Memo. 1993-514; Kelley v. Commissioner, T.C. Memo. 1991-324, affd. without published opinion

988 F.2d 1218 (11th Cir. 1993); <u>Lehew v. Commissioner</u>, T.C. Memo. 1987-389; <u>Evans v. Commissioner</u>, T.C. Memo. 1980-103; sec. 1.61-12(a), Income Tax Regs.

Here, the fact that the rent petitioner owed Mr. Riccardi was paid out of the commission the M. Riccardi Agency owed petitioner is irrelevant. See <u>Tucker v. Commissioner</u>, <u>supra</u> at 678. Receiving compensation in the form of cash is not a prerequisite to the receipt of taxable income. <u>Id.</u> at 679 (citing <u>Cohen v. Commissioner</u>, 63 T.C. 267, 283 (1974), affd. per curiam 543 F.2d 725 (9th Cir. 1976)). When petitioner's debt to Mr. Riccardi was satisfied, petitioner received an immediate economic benefit equal to the amount of the debt used to satisfy the delinquent rental obligation. See <u>id.</u>

Petitioner contends that the offset of the rent she owed to Mr. Riccardi was not income because she disputed the amount she owed to Mr. Riccardi. On March 29, 1996, when Mr. Riccardi paid petitioner $14,000 of the $60,500 commission, he told her that the $46,500 balance was offset by expenses he had incurred with respect to the Aspen Road property. Although petitioner may have disagreed with Mr. Riccardi as to the amount she owed at that time, she continued to occupy the house without paying rent and took no action against Mr. Riccardi.

Mr. Riccardi paid petitioner an additional $6,000 on August 13, 1996. After the Aspen Road property was sold, and Mr. Riccardi

agreed to pay petitioner's moving expenses, petitioner agreed to vacate the property. Nothing in the record indicates that petitioner took any action to compel Mr. Riccardi to pay her the $40,500 balance of the commission or that petitioner contested the matter. Nor is there any evidence that Mr. Riccardi took any action to compel petitioner to pay additional expenses he may have incurred because of petitioner's failure to pay rent. The dispute as to the amount of the remaining debt petitioner owed to Mr. Riccardi and the remaining amount of commission Mr. Riccardi owed petitioner apparently was resolved and settled by the end of 1996.

Petitioner was obligated under the written lease to pay Mr. Riccardi $1,800 per month from January 1, 1995, to December 31, 1996, for a total of $43,200 for the 24-month period. Although petitioner occupied the property and owed rent for the entire 24-month term of the lease, she paid Mr. Riccardi only $5,701.68. Thus, when she vacated the property at the end of 1996, she owed Mr. Riccardi $37,498.32 of unpaid rent ($43,200 - $5,701.68). Additionally, because petitioner failed to pay the rent when it was due, Mr. Riccardi incurred more than $3,000 of additional interest expense and costs for which petitioner was liable under the lease. Consequently, petitioner owed Mr. Riccardi at least $40,500 by the end of 1996.

Petitioner earned a commission of $60,500 on the sale of the shopping center in 1996. The M. Riccardi Agency paid petitioner

$20,000. The $40,500 balance owed to petitioner was credited against the $40,500 debt petitioner owed to Mr. Riccardi in 1996. To conclude, we hold that petitioner realized $60,500 of income as commission income in 1996.

To reflect the foregoing, and petitioner's concessions,

<u>Decision will be entered for respondent</u>.