T.C. Memo. 2015-178

UNITED STATES TAX COURT

GARY WAYNE RODRIGUES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27277-11L.                    Filed September 10, 2015.

Gary Wayne Rodrigues, pro se.

<u>Jonathan J. Ono</u> and <u>Peter R. Hochman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  This case arises from a petition for review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330[1] (notice of determination) with respect to petitioner's

_____

[1]  Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] Federal income tax liability for 2009. The issues for decision are:

(1) whether distributions from petitioner's individual retirement account (IRA) were includable in his gross income; and (2) whether respondent abused his discretion in sustaining the filing of a notice of Federal tax lien (NFTL).

## FINDINGS OF FACT

I.    Petitioner's Criminal Conviction

From 1984-2002 petitioner served as plan administrator of the United Public Workers Mutual Aid Trust Fund (UPW plan).[2] In 2003 he was convicted in the U.S. District Court for the District of Hawaii of mail fraud, health care fraud, money laundering, conspiracy to commit money laundering, embezzlement, and accepting kickbacks to influence operation of the UPW plan. Consequently, he was sentenced to 64 months in prison and ordered to pay a $50,000 fine to the District Court and $378,103.63 in restitution to United Public Workers (UPW).

Petitioner at that time had no liquid assets from which the judgment could be satisfied. However, petitioner while employed at UPW participated in a

---

[1](...continued)
Revenue Code in effect at all relevant times.

[2] The UPW plan was an ERISA-governed employee welfare benefit plan that provided hospitalization benefits to its participants.

[*3] defined contribution plan under which he had accrued pension benefits.[3] The Government sought to collect petitioner's fine and restitution by garnishing his pension benefits. During a court hearing petitioner's counsel, the Government's counsel, and the presiding judge voiced concern over, among other things, the tax consequences of the potential garnishment order. As a result--to avoid immediate taxation and to buy time in the hope of finding an alternate source of payment--petitioner, through undersigned counsel, established an IRA at FHB whereby his pension benefits were transferred and rolled over into the IRA.[4]

Petitioner eventually appealed his conviction and, in 2007, the Court of Appeals for the Ninth Circuit affirmed. Thereafter, petitioner filed a petition for a writ of certiorari, which the U.S. Supreme Court denied. In 2008 the District Court ordered FHB to disburse the funds it held in petitioner's IRA to satisfy petitioner's fine and restitution obligations (2008 garnishment order).

In 2008 UPW pursued a civil action against petitioner in the District Court and obtained a judgment against him for $850,000. UPW, in order to collect the

---

[3] The defined contribution plan was established and maintained at First Hawaiian Bank (FHB).

[4] Petitioner established the IRA by executing a stipulation with the Government and filing it with the District Court. In the stipulation petitioner agreed that, if necessary, the IRA proceeds would be dispersed to satisfy his fine and restitution obligations.

**[*4]** judgment, filed a motion to garnish the gains and interest that had accrued in petitioner's IRA. Petitioner objected to the motion, arguing that the gains and interest were exempt from garnishment under Haw. Rev. Stat. Ann. sec. 651-124 (LexisNexis 2012). The magistrate judge disagreed with petitioner and held that the gains and interest were not exempt because the pension benefits "lost their character as 'retirement plan assets'" when they were transferred into the IRA. Subsequently, in 2009 the District Court filed an order adopting the magistrate judge's findings and recommendation.

On December 7, 2009, FHB issued a check for $428,103.63 from petitioner's IRA to the clerk of the District Court. Additionally, on December 8, 2009, FHB issued a check for $89,343.98 from petitioner's IRA to UPW. Thereafter, FHB issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., to petitioner for 2009 reporting that he had received taxable distributions from his IRA of $517,447.61 ($428,103.63 + $89,343.98).

II.    Petitioner's Tax Return Filing and Collection Due Process (CDP) Hearing

Petitioner filed his 2009 Federal income tax return, on which he reported taxable IRA distributions of $517,448 and a tax liability of $133,116. On

[*5] November 22, 2010, the Internal Revenue Service (IRS) assessed petitioner's tax as reported on his return.

Petitioner did not fully pay the assessed tax liability. The IRS filed an NFTL regarding the liability, and on February 24, 2011, the IRS mailed petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. In response to the Letter 3172 petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On his Form 12153 petitioner (1) indicated that he was not liable for the tax owed; (2) questioned the legality and validity of the 2008 garnishment order; (3) requested a telephone CDP hearing from prison; and (4) asked the IRS to restore his IRA with interest. Petitioner also attached various documents to his Form 12153.

On May 17, 2011, the IRS Office of Appeals (Appeals) mailed petitioner a letter stating that they had received his CDP hearing request. However, the letter was returned as undeliverable because of petitioner's failure to provide an inmate register number in his CDP hearing request. On July 20, 2011, Appeals mailed petitioner a letter notifying him that his CDP hearing had been transferred to the San Francisco, California, Appeals Office.

The IRS assigned petitioner's CDP hearing to Settlement Officer Alan Owyang. On September 12, 2011, Settlement Officer Owyang mailed petitioner a

[*6] letter scheduling a telephone CDP hearing for October 5, 2011. In response, petitioner sent a letter to Settlement Officer Owyang, dated September 26, 2011, requesting a correspondence CDP hearing and an extension of time. Petitioner also informed Settlement Officer Owyang that his wife would soon contact Settlement Officer Owyang on his behalf.

On September 28, 2011, petitioner's wife sent a letter to Settlement Officer Owyang informing him that petitioner had received his September 12, 2011, letter, and would soon request an extension of time. The letter also stated that petitioner had no access to a computer and limited access to a typewriter.

Settlement Officer Owyang denied petitioner's extension request. On October 6, 2011, he mailed petitioner a "last chance letter" indicating that he would make a determination by reviewing the administrative file and any information petitioner had previously submitted. Settlement Officer Owyang advised petitioner that if he wanted to provide additional information he should do so within 14 days from the date of the letter. Petitioner did not submit any additional information.

On October 13, 2011, petitioner's wife sent a final letter to Settlement Officer Owyang informing him that petitioner had received his October 6, 2011, letter, and that petitioner had requested an extension of time on September 26,

**[\*7]** 2011.  The letter also reiterated that petitioner had no access to a computer and limited access to a typewriter.

During the course of the CDP hearing petitioner did not propose any collection alternative.  On October 31, 2011, the IRS issued petitioner the notice of determination sustaining the lien action at issue.[5]  Petitioner, while residing in California, timely petitioned this Court for review of the notice of determination.

OPINION

I.    Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for tax when a demand for payment of the tax has been made and the taxpayer fails to pay the tax.  Section 6320(a) provides that the Secretary shall furnish the taxpayer with a notice of the filing (i.e., Letter 3172) within five business days after the NFTL is filed.

If a taxpayer requests a hearing in response to a Letter 3172 pursuant to section 6320, a hearing shall be held before an impartial officer or employee of Appeals.  Sec. 6320(b)(1), (3).  At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of

---

[5]  Before the notice of determination was issued, Settlement Officer Owyang verified that all legal and administrative requirements for collection had been met.

[*8] the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing Appeals must determine whether proceeding with the lien action is appropriate. In making that determination Appeals is required to take into consideration: (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer; and (3) whether the lien action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the collection action. Sec. 6330(c)(3).

II.    Standard of Review

If the taxpayer disagrees with Appeals' determination, the taxpayer may seek review of the determination by filing a timely petition in this Court. Secs. 6320(c), 6330(d). If a taxpayer's underlying liability is properly at issue, we review any determination with respect to the underlying liability de novo. Sego v.

[*9] Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review any other administrative determination for abuse of discretion. Craig v. Commissioner, 119 T.C. 252, 260 (2002) (citing Sego v. Commissioner, 114 T.C. at 610).

Respondent concedes that petitioner did not receive a notice of deficiency and did not otherwise have an opportunity to challenge the underlying tax liability. Accordingly, petitioner may challenge the underlying liability in this proceeding and, to the extent the underlying liability is at issue, we will review respondent's determination de novo.

III.  Burden of Proof

Petitioner does not dispute that the IRA distributions were made or respondent's calculation of tax. Rather, petitioner disagrees only with respondent's legal conclusions (i.e., that petitioner's IRA distributions were taxable). Because the relevant facts are undisputed and only a legal issue remains, we need not decide who bears the burden of proof on this issue. See Estate of Morgens v. Commissioner, 133 T.C. 402, 409 (2009), aff'd, 678 F.3d 769 (9th Cir. 2012); see also Waamiq-Ali v. Commissioner, T.C. Memo. 2010-86; Rozzano v. Commissioner, T.C. Memo. 2007-177.

**[*10]** IV.    Distributions From Qualified Retirement Plans

Distributions from qualified retirement plans are generally includable in the distributee's income in the year of distribution as provided in section 72.  Secs. 402(a), 408(d)(1).  An exception exists if the distribution proceeds are rolled over into an IRA within 60 days of the distribution.  Sec. 408(d)(3).

This case revolves around three separate distributions--one in 2004 and two in 2009--that occurred after petitioner's criminal conviction.  As part of his criminal sentence, the District Court ordered petitioner to pay a fine to the District Court and restitution to UPW.  However, at that time petitioner had no liquid assets from which the judgment could be satisfied.  As a result, in 2004, to satisfy petitioner's fine and restitution obligations, the Government moved to garnish petitioner's pension benefits.  Petitioner--to avoid immediate taxation and to buy time in the hope of finding an alternate source of payment--established an IRA at FHB whereby his pension benefits were transferred and rolled over into the IRA. The parties do not dispute that this rollover distribution was nontaxable in 2004 and thus allowed petitioner to continue to defer taxation of his pension benefits until a subsequent distribution.

Petitioner unfortunately was unable to find an alternate source of payment. As a result, in 2008--after the District Court's conviction was affirmed by the

**[\*11]** Court of Appeals for the Ninth Circuit--the District Court ordered FHB to disburse the funds it held in petitioner's IRA to satisfy petitioner's fine and restitution obligations. Thereafter, in 2009 FHB issued two checks from petitioner's IRA--one to the clerk of the District Court for $428,103.63 and the other to UPW for $89,343.98. Petitioner argues, among other things, that these distributions should not be subject to tax because he personally did not receive the funds or receive a benefit therefrom and the withdrawals were involuntary. Respondent argues that the statute requires the imposition of the tax irrespective of actual receipt by or benefit to petitioner or the voluntary nature of the distribution.

We agree with respondent. Petitioner constructively received the IRA distributions when the distributions were made to the District Court and UPW in satisfaction of petitioner's obligations, and petitioner cannot escape taxation on the basis that the funds were disbursed to third parties. See Larotonda v. Commissioner, 89 T.C. 287, 291 (1987). "The discharge by a third person of * * * [a taxpayer's obligation] is equivalent to receipt by the person taxed." Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); see also Young v. Commissioner, 113 T.C. 152, 157 (1999), aff'd, 240 F.3d 369 (4th Cir. 2001). The fact that the transfer is involuntary, such as by garnishment, has no significance. See, e.g., Tucker v. Commissioner, 69 T.C. 675, 678 (1978);

[*12] <u>Chambers v. Commissioner</u>, T.C. Memo. 2000-218 (holding amounts garnished from employee's wages for alimony and child support were includable in employee's income), <u>aff'd</u>, 17 Fed. Appx. 688 (9th Cir. 2001); <u>Vorwald v. Commissioner</u>, T.C. Memo. 1997-15 (holding that amounts transferred from taxpayer's retirement account to his former spouse in garnishment proceeding constituted deemed distributions to taxpayer from his retirement account and were, therefore, includable in his income).

Petitioner's IRA was garnished to satisfy his fine and restitution obligations imposed by the District Court. The garnished funds, in other words, were paid to satisfy legal obligations that petitioner owed and thus constitute gross income to him.

Petitioner also attempts to find fault with the District Court, the Government, and FHB. Petitioner asserts on brief that he trusted and relied on these entities to "comply with the law" and that they violated the law when they established and administered his IRA, and ultimately distributed the proceeds from his IRA. We disagree. First, it was petitioner who, through undersigned counsel, decided to establish the IRA at FHB. Second, petitioner generally cited various sections of the Internal Revenue Code--including sections 408 and 3405--but failed to specify how any of the entities involved did not comply with these

**[*13]** provisions. Third, petitioner is mistaken in his belief that the IRA was established to escape taxes indefinitely. Petitioner was advised to establish the IRA to avoid a taxable event before he had exhausted his appeal of his conviction and to give himself additional time to find an alternate source of payment. When petitioner was unable to find an alternate source of payment, the District Court ordered FHB to disburse the proceeds from petitioner's IRA to satisfy his fine and restitution obligations. The economic benefit petitioner enjoyed in 2009 when he constructively received the distributions cannot be ignored.

Petitioner also refers to the magistrate judge's findings and recommendation in Decosta ex rel. Bd. of Trs. of United Public Workers v. Rodrigues, No. 03-00598 DAE-LEK, 2009 WL 3399091 (D. Haw. Oct. 22, 2009), to show that the IRA distributions were not taxable to him. These findings stem from UPW's motion filed in the District Court to garnish the gains and interest that accrued in petitioner's IRA. Petitioner objected to the motion, arguing that the gains and interest were exempt from garnishment under Haw. Rev. Stat. Ann. sec. 651-124.[6] The magistrate judge disagreed with petitioner and held that the gains and interest

---

[6] Haw. Rev. Stat. Ann. sec. 651-124 (LexisNexis 2012) exempts from attachment, execution or seizure, the rights of a debtor to a pension, annuity, retirement or disability allowance under certain retirement plans described under the Internal Revenue Code.

[*14] were not exempt because petitioner's pension benefits "lost their character as 'retirement plan assets'" when they were transferred into the IRA. Petitioner urges us to adopt the magistrate judge's line of reasoning here. We decline to do so. First, it is important to note that the magistrate judge's findings were made in a different context. Additionally, we do not agree with the magistrate judge's conclusion that the IRA was created for the Government and UPW. The record shows that the IRA was created for the sole purpose of assisting petitioner to avoid a taxable event before he had exhausted his appeal of his conviction and to give him additional time to find an alternate source of payment. Furthermore, our inquiry here is whether the distributions at issue were taxable to petitioner for 2009. The fact is, petitioner enjoyed an economic benefit in 2009 when, for purposes of satisfying his fine and restitution obligations, FHB disbursed the funds it held in his IRA--an account established solely for his benefit and funded by his pension fund. Accordingly, because petitioner constructively received the IRA distributions in 2009, they are includable in his gross income for that year.

Petitioner lastly argues that the 2008 garnishment order violated the Consumer Credit Protection Act as well as the Mandatory Victims Restitution Act. Petitioner requests that, as a consequence, we reverse the 2008 garnishment order and restore his IRA with interest. Petitioner must resort to the appropriate Federal

[*15] court for a resolution of such disputes. Complaints of this nature are beyond the jurisdiction of this Court. Although petitioner disagrees with the 2008 garnishment order, he has not shown a legitimate basis for excluding the 2009 distributions from his gross income.

V.     Abuse of Discretion

We now turn to respondent's determination to proceed with collection, which we review under an abuse of discretion standard. Appeals abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner has not advanced any argument that Settlement Officer Owyang's actions were an abuse of discretion. Additionally, petitioner did not offer any collection alternative during the course of the CDP hearing. Furthermore, Settlement Officer Owyang determined that the requirements of applicable law and administrative procedure were met and concluded that sustaining the NFTL appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the lien action. Accordingly, we hold that respondent did not abuse his discretion in sustaining the NFTL.

**[\*16]** In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.