T.C. Summary Opinion 2005-96


UNITED STATES TAX COURT


MARIO O. AND ELSIE R. GARZA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 779-04S.                    Filed July 21, 2005.


Mario O. and Elsie R. Garza, pro se.

<u>Thomas D. Greenaway</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies of $5,939, $5,472, and $4,318 in petitioners' Federal income taxes for 1999, 2000, and 2001, respectively. Respondent also determined an accuracy-related penalty under section 6662(a) in the amount of $863 for 2001. The issues for decision are: (1) Whether Mario O. Garza (petitioner) received income from American Income Life Insurance Co. (American Life) during 1999, 2000, and 2001 under section 61(a); (2) whether petitioner is liable for self-employment taxes for 1999, 2000, and 2001 under section 1401(a); and (3) whether petitioners are liable for the accuracy-related penalty for 2001 under section 6662(a) for negligence, disregard of rules or regulations, or a substantial understatement of income tax.[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made a part hereof. Petitioners' legal residence at the time the petition was filed was Fresno, California.

At the time of trial, petitioner and his wife, Elsie R. Garza (Ms. Garza), were seeking a divorce. However, they were

---

[2]Respondent did not determine any penalty for the years 1999 or 2000. Additionally, in the notice of deficiency, some of petitioners' itemized deductions for the 3 years at issue were disallowed. The notice of deficiency states that petitioners agreed to those adjustments. Petitioners did not challenge these adjustments at trial.

married and resided together at all times during the years at issue.

Petitioner was employed as an independent insurance agent (agent) with American Life from 1987 to 1988 and again from 1989 to 1998.[3]  As an agent for American Life, petitioner sold insurance policies.  For each policy he sold, petitioner earned a commission.  American Life would advance to petitioner the anticipated first-year commission on that policy.  This advancement was referred to as a loan against anticipated first-year commissions and not taxable at the time of receipt.  In the event the policy was terminated before the year ended, petitioner was obligated to pay the commission back to American Life.  Additionally, American Life paid certain expenses for petitioner that were added to petitioner's outstanding account balances due to American Life.[4]  According to account ledgers produced by respondent from American Life, during the term of petitioner's employment, petitioner received advances against

[3]There is a dispute as to whether petitioner terminated his employment in 1997 or 1998.  Petitioner contends that he was no longer employed by American Life in 1997; however, he stipulated to working for American Life until 1998.  This discrepancy has no bearing on the issue.

[4]At the time of the audit, Ms. Garza went through the documents provided by American Life, which set out the advances and expenses paid by American Life on petitioner's behalf.  Ms. Garza contacted American Life requesting an explanation of the expenses on the account.  Petitioners presented no evidence at trial with respect to these expenses.

future commissions and had certain expenses paid for by American Life that amounted to almost $90,000. When asked at trial whether he kept books or records to keep track of the advances made, expenses paid, and the commissions earned, petitioner stated that he may have kept records but did not know where they were at the time.

When petitioner left American Life in 1998, his accounts were terminated fully vested. The term "fully vested" meant that petitioner would continue earning commissions on all policy renewals in his accounts even if he was no longer working for American Life. During 1999, 2000, and 2001, several of petitioner's former accounts with American Life were renewed. Petitioner was entitled to commissions on these renewals. Additionally, during 1999, 2000, and 2001, petitioner was entitled to commissions from renewals on policies written by agents who were subordinate to petitioner while he was employed by American Life.

During the years at issue, all commissions coming to and creditable to petitioner were applied to the liquidation of petitioner's outstanding account balances owed to American Life. American Life credited to petitioner's accounts $20,957[5] of such

---

[5]These amounts are rounded to the whole dollar.

commissions in 1999, $17,705 in 2000, and $14,673 in 2001.[6] American Life issued Forms 1099-MISC, Miscellaneous Income, for these amounts in the respective years.

Petitioners filed timely joint Federal income tax returns for 1999, 2000, and 2001. However, because petitioners were confused by the Forms 1099 sent to them by American Life, they did not report the income reflected on those forms for any of the years at issue.[7]

On October 10, 2003, respondent issued the notice of deficiency (notice) for the years in question. As stated above, respondent determined deficiencies of $5,939, $5,472, and $4,318 in petitioners' Federal income taxes for 1999, 2000, and 2001, respectively. In the notice, respondent explained:

> According to American Income Life Insurance Company, the income on 1099 you received is income to you. These are your earning[s] from commission on prior sales. According to American, you took advance monies on your future earnings and the 1099 amounts are what was applied to the amount due. * * * These earnings are to be reported as income either in the year you received the monies or the year earned.

---

[6]The amounts in the ledgers for 2001, attached as part of the Stipulation of Facts, do not equal the amount on the Form 1099-MISC, Miscellaneous Income, from American Life for that year. There is a $32 difference in petitioner's favor on the Form 1099. For purposes of this opinion, the Court considers the amounts determined in the notice of deficiency to be correct, as no evidence was presented to establish the $32 difference.

[7]Although petitioners claim they contacted American Life questioning the Forms 1099, no evidence was presented to show that the amounts on the Forms 1099 were incorrect.

The deficiencies also included self-employment taxes for 1999, 2000, and 2001, as respondent determined these commissions constituted self-employment income.  Additionally, respondent determined an accuracy-related penalty under section 6662(a) in the amount of $863 only for 2001.

The first issue is whether petitioner earned income from American Life during 1999, 2000, and 2001 under section 61(a) based on commissions that he was entitled to after he no longer worked for American Life that were not paid directly to him but were diverted or applied to his debit accounts to offset the balances he owed.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).[8]

---

[8]Sec. 7491 shifts the burden of proof to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining a tax liability provided the taxpayer has maintained books and records and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews.  The burden of proof does not shift in this case principally because petitioners did not maintain accurate books and records of the commissions earned by petitioner with American Life.  Had petitioners maintained accurate books and records, there likely would have been no need for these proceedings.  The questions raised by petitioner are attributable solely to his failure to maintain books and records.  Sec. 7491(c), however, places upon the Commissioner the burden of production with respect to any penalty or addition to tax.

Section 61(a)(1) provides that gross income includes "all income from whatever source derived, including (but not limited to) * * * compensation for services, including fees, commissions, fringe benefits, and similar items", unless otherwise provided. The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted". Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955); see also Roemer v. Commissioner, 716 F.2d 693, 696 (9th Cir. 1983), revg. 79 T.C. 398 (1982) ("[all] realized accessions to wealth are presumed to be taxable income, unless the taxpayer can demonstrate that an acquisition is specifically exempted from taxation"). Moreover, section 1.61-2(a)(1), Income Tax Regs., provides that "wages, salaries, commissions paid salesmen, * * *, commissions on insurance premiums, * * * are income to the recipients unless excluded by law".

"In the situation where the advances are actually loans, when the repayments are offset directly by the future earned commissions, then the agent will have either commission income or cancellation of indebtedness income at the time of the offsets." Diers v. Commissioner, T.C. Memo. 2003-229; Cox v. Commissioner, T.C. Memo. 1996-241; cf. Warden v. Commissioner, T.C. Memo. 1988-165. Although petitioner's employment with American Life terminated in 1998, he continued to thereafter earn renewal

commissions on policies he had sold before his departure.
Instead of paying these commissions to petitioner, American Life
diverted the commissions to his accounts showing balances owed by
petitioner for the advances and expense payments previously
described. When American Life previously made advances to
petitioner, he was not taxable on such advances because the
advances were loans secured and payable through future earned
commissions. Beaver v. Commissioner, 55 T.C. 85, 91 (1970);
Diers v. Commissioner, supra. When American Life applied the
renewal commissions to petitioner's outstanding account balances,
petitioner's obligation to repay the loans was reduced by those
amounts, and the reduction of his obligations constituted his
receipt of taxable income. Diers v. Commissioner, supra; Newmark
v. Commissioner, 311 F.2d 913, 915 (2d Cir. 1962), affg. T.C.
Memo. 1961-285. Therefore, the Court holds that petitioner
received commission income during 1999, 2000, and 2001, in the
amounts of $20,957, $17,705, and $14,673, respectively, as
determined in the notice of deficiency. Respondent, therefore,
is sustained on this issue.

The second issue is whether petitioners are liable for
self-employment taxes for 1999, 2000, and 2001 under section 1401
based on the aforesaid income.

Section 1401(a) imposes a tax upon the self-employment
income of every individual. In general, self-employment income

consists of the net earnings derived by an individual (other than a nonresident alien) from a trade or business carried on by such individual. Sec. 1402(a) and (b); sec. 1.1401-1(c), Income Tax Regs. To constitute self-employment income, "there must be a nexus between the income received and a trade or business that is, or was, actually carried on." Newberry v. Commissioner, 76 T.C. 441, 444 (1981). The "income must arise from some actual (whether present, past, or future) income-producing activity". Id. at 446. Additionally, section 1.1402(a)-1(c), Income Tax Regs., provides that gross income derived from an individual's trade or business may be subject to self-employment tax even when it is attributable to services rendered in a prior taxable year. Jackson v. Commissioner, 108 T.C. 130, 134 (1997); Schelble v. Commissioner, 130 F.3d 1388, 1392 (10th Cir. 1997), affg. T.C. Memo. 1996-296.

In order to be derived from a trade or business the payment received by an insurance agent after termination must be "tied to the quantity or quality of the taxpayer's prior labor, rather than the mere fact that the taxpayer worked or works for the payor." Milligan v. Commissioner, 38 F.3d 1094, 1098 (9th Cir. 1994), revg. T.C. Memo. 1992-655; see Jackson v. Commissioner, supra at 135. The taxpayer in Milligan was not liable for self-employment tax because "none of his business activity was the 'source' of the Termination Payments. * * * Nor were they

renewal commissions on previously-generated policies". <u>Milligan v. Commissioner</u>, <u>supra</u> at 1099 (citing <u>Erickson v. Commissioner</u>, T.C. Memo. 1992-585, affd. without published opinion 1 F.3d 1231 (1st Cir. 1993)). In <u>Erickson v. Commissioner</u>, <u>supra</u>, the Court found that the payments under the settlement agreement entered into between the taxpayer and the insurance company represented renewal commissions and were taxable as self-employment income under section 1401(a).

Petitioner was an independent agent for American Life until 1998. Upon the termination of his employment, he was fully vested in his accounts, which entitled him to receive commissions on the renewal of any policies that he wrote while he was an active agent. Petitioner did not dispute or challenge whether the commissions earned, and applied to his outstanding balances, were commissions on the renewal of policies that he wrote. He did not contend or establish that he was a statutory employee pursuant to section 3121(d)(3)(B). See <u>Diers v. Commissioner</u>, <u>supra</u> at n.6. Accordingly, the Court holds that petitioner earned renewal commission income and is, therefore, liable for self-employment tax on that income.

The final issue is whether petitioners are liable for the accuracy-related penalty for the year 2001 under section 6662(a) for negligence, disregard of rules or regulations, or a

substantial understatement of income tax.  As noted above, the burden of production is on respondent.  Sec. 7491(c).

Section 6662(a) provides that, if it is applicable to any portion of an underpayment in tax, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations. Section 6662(b)(2) provides that section 6662 shall apply to any substantial understatement of income tax.

Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Under section 6662(d)(1), there is a substantial understatement of income tax if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.  For purposes of section 6662(d)(1), "understatement" is defined as the excess of tax required to be shown on the return over the amount of tax that is

shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). Section 6662(d)(2)(B) provides that the amount of the understatement shall be reduced by that portion of the understatement that is attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for the treatment or to any item with respect to which (1) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and (2) there is a reasonable basis for such treatment.

Under section 6664(c), however, no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for the portion and that the taxpayer acted in good faith with respect to the portion of the underpayment.

The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer has the burden of proving that he acted with reasonable cause and in good faith. Higbee v. Commissioner, 116 T.C. 438, 446-449 (2001).

Due to the failure to report petitioner's commission income in 2001, petitioners had an understatement of tax in the amount of $4,318. The amount of tax required to be shown on the 2001 return was $6,932; thus, the amount of the understatement exceeds

10 percent of the tax required to be shown on the return. Therefore, there was a substantial understatement of tax under section 6662(d)(1). Petitioners received a Form 1099 for 2001 and failed to include that income on their 2001 income tax return. Because the requirements for relief from the section 6662 substantial understatement penalty have not been met and petitioners have not given any reasonable cause for failing to report the income, petitioners are liable for the accuracy-related penalty under section 6662.[9]

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[9]Because it is clear that there was a substantial understatement of tax on the 2001 return, it is not necessary for the Court to determine whether petitioners were negligent in not reporting the commission income for that year.